Slippery Rock Area Joint School System *v.* Franklin Township School District, Appellant.

436

Argued March 20, 1957.  Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Lee C. McCandless,* for appellant.

*George P. Kiester,* with him *Kiester, Coulter & Gilchrist,* for appellees.

Opinion per Curiam, June 28, 1957:

The additional arguments advanced on this appeal by the appellant are entirely lacking in merit. The judgment of the Court of Common Pleas of Butler County is affirmed on the following excerpts from the opinion of Judge Rodgers:

"This matter is before the Court on a Petition for a Declaratory Judgment filed by the Slippery Rock Area Joint School System and eleven of the twelve member districts of that System v. The Franklin Township School District, also a member of that System.

"The System comprises administrative Unit Number 1 of the Butler County Plan for joint schools as approved by the Butler County School Board and the Pennsylvania Department of Public Instruction. The Articles of Agreement creating this System were entered into on December 1, 1952, and provide, in part, that the Agreement should continue in full force or effect until May 1, 1961.

"The legislative authority for the establishment of school systems is found in Section 1701 of the School Code, which provides that: 'The Board of School Directors in any two or more school districts may estab-

438

lish, construct, equip, furnish and maintain joint elementary public schools, high schools, consolidated schools or any other kind of schools or departments provided for in this Act.' (24 PS §17-1701). And Section 1704 which provides that: 'the several Boards of School Directors establishing and maintaining such joint schools or departments, are hereby authorized to meet jointly, to exercise the same power and authority over the same as the several Boards exercised over the schools in their respective districts.' 24 PS §17-1704.

"In conformance with this Agreement and School Code, the joint school board proceeded with plans to build a new Junior-Senior High School building, at an estimated cost of $2,310,100, to the extent of purchasing a site for $20,000, engaging an architect to draw the plans, submitting an application for approval of the project to the Butler County Boards of School Districts, and the Commonwealth. The Butler County Board of School Directors approved the plan on November 12, 1953 and on March 15, 1954, the Commonwealth advised the System that the building project had been assigned a Project No. 650 by the Department of Public Instruction, and that final approval would be withheld until additional appropriations were made by the legislature. The defendant, through its Board, had voted favorably on each of these steps. Since reorganization of the defendant's Board, later in December, 1955, the defendant has declined to participate and cooperate with the System in this building program. They have requested that they be released from the System. This permission was denied by the vote of the remaining eleven Boards of the System.

"The petition for Declaratory Judgment prays the Court to answer two questions. First: To determine if said school board is obliged to participate and cooperate in the construction of the Junior-Senior school

building; Second: To determine the vote on which the Franklin Township School District is bound on matters relating to the construction and financing of the Junior-Senior High School Building.

"In Answer to the Petition for a Declaratory Judgment the defendant . . .:

. . .

"D. Alleged that the defendant was not bound to take any action with reference to the secondary school building program but only to give the matter 'friendly consideration'.

"The pertinent section of the Uniform Declaratory Judgment Act states that: 'Any person interested under . . . Written Contract . . . or whose rights, status, or other legal relations are affected by a statute . . ., contract . . . may have determined any question of construction or validity arising under the instrument, statute . . . and obtain a declaration of rights, status, or other legal relations thereunder.'

"In this case, the plaintiff-petitioners are asking for an interpretation of a statute and for the declaration of a status. . . .

"The prayer of the petition in effect asks us to determine what vote of the Joint School Board will bind the Franklin Township School District on matters relating to the construction and financing of a Junior-Senior High School Building. A derivative and vital question as argued to the Court in oral argument and set out in the Briefs of both parties is 'can the action of the Joint Board bind the defendant board to the terms of a lease extending beyond the so-called termination date of the jointure agreement'.

"It is the opinion of this Court that, with reference to the construction and financing of a Junior-Senior High School Building, the Franklin Township School District is bound by any decision of the Board made

with the concurrence of the majority of the members of two-thirds of the Boards of the constitutent districts and the majority of all of the individual members of the various boards. This is the holding of the Supreme Court in *Hunlock Township School District v. Northwest Joint School District of Luzerne County*, 380 Pa. 464, 468.

"The individual school board clearly has the power to build school buildings and finance them over any reasonable period of time. Under the jointure provisions of the Code, a joint school board has the same power over a joint school system as an individual board has over an individual district. 24 PS §17-1704. Therefore, unless restricted by its agreement, the joint board has the power to build and finance a Junior-Senior High School.

"The defendant contends there is such a restriction because the defendants only bound themselves to a 'friendly consideration' of the secondary school construction problem and not to the actual construction of such a building.

"Under the heading of *'School Buildings'* the agreement dealt with three aspects of the building problem, as follows:

"SCHOOL BUILDINGS"

"13. The member boards commit themselves to a friendly consideration of any opportunity to extend the present building facilities through rental from the Slippery Rock State Teachers College, State Authority, or Municipal Authorities.

"14. Member school districts shall retain title to currently-owned real properties.

"15. The construction of new elementary school buildings shall be the responsibility of the individual school districts. The costs shall be paid by said school

districts and title to said Buildings shall be retained by said district.

"In this Court's opinion, this language does not limit the Board's statutory power. In the Preamble of the Agreement, it is recited as a reason for the agreement that 'school facilities and educational opportunities can more efficiently be furnished, supervised, and operated by a joint school system'. Other provisions of the agreement make it clear that the contracting parties contemplated the construction and financing of school buildings. The agreement provided, in paragraphs 9 & 10, for the sharing of capital expenditures including future capital expenditures financed by bonded indebtedness and the sharing of rental on facilities owned and constructed by State or Municipal authority.

"This language could only refer to secondary schools, for the construction of elementary schools was reserved to the individual districts. Certainly it cannot be argued with any force that the language of paragraph 13 of the Agreement was ever intended to be a restriction on the power of the jointure group. Had they intended such a result, they most certainly would have used specific language which they in fact did use with reference to elementary schools in paragraph 15. In short, we believe that the required 'friendly consideration' was given, that following this consideration certain action was taken which action binds the defendant for the duration of the contract.

"The troublesome question remains as to the meaning of the duration of the contract. Does it mean, as contended by the defendant, that this Board can take no action which can be legally binding on the individual members beyond the termination date of the Agreement, or does it merely mean that following the termination date of the Agreement, the Joint Board, as such can-

442

not continue to be legally effective without the affirmative consent of each member board?

"This requires a rather searching inquiry into legal status of our school system, generally, and of our school boards and joint school boards, specifically.

"First, it should be remembered that our entire school system is but an agency of the State Legislature—maintained by them to carry out a constitutional duty. It has been said that 'our common school system was not adopted in this State as it exists today, until many years after the Revolution, through the Constitutions of 1776, 1790, and 1838, and the laws recognized its virtually important part in our existence.' After Thaddeus Stevens' and Governor Wolf's famous crusade for education, our schools became an integral part of our governmental system, as a State institution: the Constitution of 1874 fortified it and directed the legislature to maintain a 'thorough and efficient system of public schools'. Article 10, Section 1. The school system, or the school district, then, are but agencies of the state legislature to administer this constitutional duty. *Wilson et ux. v. Philadelphia School District,* 328 Pa. 225, 230.

"Within that school system, a school district is an agency of the State, created by law for the purpose of promoting education, deriving all of its powers from the statute, and discharging only such duties as are imposed upon it by statute. The school district is an agency of the State charged with the sovereign duty of building and maintaining the schools within its particular territory and with the further duty of securing, managing, and spending the necessary funds in the interest of public education. Included among the described and proper means of raising funds and building buildings, is by the device of the municipal authority. There can be no doubt but that any individual school

board following the prescribed regulations and statutes, would have the power to commit its district to a lease or rental agreement extending, as is customary today, for a twenty to thirty year period. All of these powers may be increased, decreased, or turned over to an entirely different body by the legislature, as it sees fit.

"In comparatively recent years, the legislature has empowered and encouraged its agents, the individual school districts, to form joint school districts 'in order to obtain a better education for the children of the Commonwealth'. *Appeal of Walker*, 332 Pa. 488, 491.

"May a joint school district, whose existence will terminate on the first Monday of July, 1961, commit itself to a lease rental agreement extending beyond that date? We believe it can, and we believe that the legal effect of its decision to do this would be to bind the School district of Franklin Township to its pro rata share of such a rental, for the entire term of the lease agreements. We believe that to hold otherwise would give each school district a veto over the construction of school buildings and thus, in the language of the Supreme Court in the *Hunlock Township* case disregard 'the objective of a better education for the children of the Commonwealth', and 'emasculate' . . . the 1951 amendment of the Code which was devised to secure flexibility of operation by permitting action by the concurrence of the boards of two-thirds of the constituent districts'. 380 Pa. 464, 470.

"Whether it is particularly palatable or not, the fact is that for a ten-year period, the School Board of Franklin Township has on this particular question, lost its identity as a governing force where two-thirds of the other Boards vote to oppose their judgment. In *Detweiler v. Hatfield Borough School District*, 376 Pa. 555, 566, the Supreme Court said 'equally un-

444

founded are appellant's objections that the jointure contract was unenforcible because . . . it deprived future school directors of discretions in the management of school affairs.'

"Thus, under the jointure, it is the action of the jointure binding all of the districts which is the legally operative fact. On this question, the action of the individual board no longer has any specific impact on the individual district. It is an impact by the action of the joint board over all the member districts. The language of the statute bears repeating here. The several boards . . . are hereby authorized to meet jointly and to exercise the same power and authority over the same (the members of the system) as the several boards exercised over the schools in their respective districts.' Certainly the power of an individual board, not a member of a jointure, to execute such a lease rental agreement cannot be questioned.

"The citizenry, through the action of their Board, have for a ten-year period committed themselves to abide by any decision properly made by the joint board during that ten-year period. This is not unlike the power of the citizenry acting through a board elected one year, to bind the citizenry beyond the term of the board in question. *Horvat v. Jenkins Township School District,* 337 Pa. 193, 195. What has been delivered by the Franklin Township School District is the power to act and this power 'shall continue in full force and effect until the first Monday of July, 1961.' This power which was delivered, included the power to contract a debt otherwise proper payable over any reasonable length of time. It is a matter of common knowledge that a school building such as that approved for construction by all the members of this System, costing over $2,000,000 cannot be financed in a ten-year period. Thus, we believe the conclusions are not only legally

sound but also specifically within the objectives of the jointure provisions of the School Code.

"1. The Franklin Township School District is bound by any decision of the Slippery Rock Area Joint School Board concerning the construction and financing of a 'Junior-Senior High School building, when such decision is made with the concurrence of a majority of the members of two-thirds of the Boards of the constituent districts and the majority of all of the individual members of the various boards.

"2. The action of the Slippery Rock Area Joint School Board can bind the School District of Franklin Township to contribute a pro-rata share to a lease rental agreement extending beyond the termination date of the present jointure agreement."

Judgment affirmed.