337 A.2d 262

PENNSYLVANIA LABOR RELATIONS BOARD,
Appellant,

v.

STATE COLLEGE AREA SCHOOL DISTRICT,
and the Board of School Directors.

Appeal of STATE COLLEGE AREA EDUCA-
TION ASSOCIATION.

Appeal of AMERICAN FEDERATION OF STATE, COUN-
TY & MUNICIPAL EMPLOYEES, AFL–CIO.

Supreme Court of Pennsylvania.

Argued Jan. 21, 1974.

Decided April 17, 1975.

496

Clarence C. Morrison, Pa. State Ed. Ass'n, Harrisburg, for appellant in No. 49.

Israel Packel, Atty. Gen., James L. Crawford, James F. Wildeman, Francis A. Zulli, Raymond W. Cramer, Asst. Attys. Gen., Harrisburg, for Pa. Labor Relations Bd.

Robert M. Rowlands, Richard Kirschner, Markowitz & Kirschner, Philadelphia, for appellant in No. 50.

John R. Miller, Jr., Miller, Kistler, Campbell & Mitenger, Bellefonte, for appellee in No. 50.

Jerome H. Gerber, Handler, Gerber & Weinstock, Harrisburg, for amicus curiae, Pa. State AFL–CIO.

William Fearen, Cleckner & Fearen, Harrisburg, for amicus curiae, Pa. School Boards Ass'n.

Woodley B. Osborne, Washington, D. C., for amicus curiae, American Ass'n of University Professors; Stephen R. Goldstein, Robert A. Gorman, Philadelphia, of counsel.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

NIX, Justice.

The subject of this appeal is the relatively recent enactment of the Public Employee Relations Act.[1] The dispute centers upon the tension evoked between what the legislature has specifically made bargainable and what the legislature has also specifically allowed management to reserve to its unilateral decision-making. In this instance we are required to interpret section 701 and determine its scope in light of sections 702 and 703.

The State College Area Education Association (Association) filed with the Pennsylvania Labor Relations Board (Board) an unfair labor charge consisting of twenty-three items on which the Board of School Directors of State College Area School District (School District) refused to bargain, allegedly in violation of section 701. The Association asserted that the School District

1. Act of July 23, 1970, P.L. 563, No. 195, art. I, § 101 et seq.; 43 P.S. 1101.101 et seq. (Supp.1974–75).

violated section 1201(a)(5)[2] of the Act 195 by refusing to negotiate the questioned issues. The School District filed a timely answer, denying that it refused to negotiate on Item 19 (which was subsequently withdrawn) and admitting refusal to bargain on the remaining items contending that these items were not matters where they were mandated to bargain. Following hearings before a hearing examiner, during which Items 19 and 23 were withdrawn by the Association, the Board issued a nisi decision and order dismissing the charge of unfair labor practice against the School District. Exceptions were filed and oral argument was had followed by a final order in which the Board ruled that the School District had failed to bargain in good faith with the Association on five of the remaining twenty-one items. The Board affirmed its rulings as to the other sixteen items holding that these were not bargainable.

Both the School District and the Association petitioned the Court of Common Pleas of Centre County for review. That court affirmed the final order of the Board as to the sixteen items which were held to be non-bargainable and reversed the Board's final order as to the five items which the Board had found to be proper subjects for mandatory collective bargaining under section 701. Both the Association and the Board filed appeals to the Commonwealth Court from the order of the Court of Common Pleas of Centre County which resulted in an affirmance of the order with three judges of the Commonwealth Court concurring in part and dissenting in part. We granted allocatur and this appeal follows.

2. "(a) Public employers, their agents or representatives are prohibited from:
(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, . . ." Act of July 23, 1970, P.L. 563, No. 195, art. XII, § 1201; 43 P.S. 1101.1201 (Supp.1974–75).

## I.

It is argued that the absence of precedent interpreting the relatively new Act 195 in this area and the similarity of language between section 701, now under consideration, and section 8(d) of the National Labor Relations Act, 29 U.S.C. 158(d), would suggest that the National Labor Relations Board's cases and federal decisions interpreting section 8(d) should provide compelling authority for the resolution of the current dispute. Since *N. L. R. B. v. Wooster Division of Borg-Warner Corp.*, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958), private employers are required to bargain only with respect to those matters which directly relate to "wages, hours and working conditions." Other matters of mutual concern may be discussed if both parties agree. When a subject under discussion is not mandatory a strike or lockout may not be used to compel negotiation or agreement. *Allied Chemical and Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971); *Fibreboard Paper Products Corp. v. N. L. R. B.*, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). While this basic dichotomy has been followed under Act 195, it does not necessarily follow that federal precedent relating to private employment is particularly helpful in resolving the difficulties arising in the public sector.

Although these decisions may provide some guidance, we are mindful of the distinctions that necessarily must exist between legislation primarily directed to the private sector and that for public employes. The distinction between the public and private sector cannot be minimized. Employers in the private sector are motivated by the profit to be returned from the enterprise whereas public employers are custodians of public funds and mandated to perform governmental functions as economically

and effectively as possible. The employer in the private sector is constrained only by investors who are most concerned with the return for their investment whereas the public employer must adhere to the statutory enactments which control the operation of the enterprise. We emphasize that we are not suggesting that the experience gained in the private sector is of no value here, rather we are stressing that analogies have limited application and the experiences gained in the private employment sector will not necessarily provide an infallible basis for a monolithic model for public employment.[3]

We also recognize the wisdom of refraining from attempting to fashion broad and general rules that would serve as a panacea. The obviously wiser course is to resolve disputes on a case-by-case basis until we develop, through experience in the area, a sound basis for developing overall principles.

Guided by these preliminary observations, we will now proceed to consider the sections in question and determine their applicability to the items at issue. Section 701 provides:

> "Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession."

**3.** See Wollett and Chanin, The Law and Practice of Teacher Negotiations; Edwards, "The Developing Labor Relations Law in the Public Sector", 10 Duquesne L.Rev. 357 (1972); See also, Wellington and Winter, Jr., "Structuring Collective Bargaining in Public Employment", 79 Yale L.J. 805 (1970).

That the right to collective bargaining as to "wages, hours and other terms and conditions of employment" is not unlimited, is made clear by the two succeeding sections. Section 702 states:

"Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives."

Section 703 states:

"The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters."

The conflict in the Commonwealth Court centered upon the extent the legislature intended to limit the scope of negotiation made mandatory under section 701 by its inclusion of sections 702 and 703 within this act. The majority of that court concluded that any item of wages, hours, and other terms and conditions of employment affecting policy determinations or the impairment of other performance of the duties and responsibilities imposed upon public employers by statute are not bargainable. *Pa. L. R. B. v. State College Area School District*, 9 Pa.Cmwlth. 229, 306 A.2d 404 (1973). Judge

Kramer, in a dissent joined by two other members of the court, took a different view. Judge Kramer wrote:

> "My reading of the statute (Act 195) leads me to find a legislative intent to provide for good faith collective bargaining wherever the teachers' employment rights are directly affected by 'wages, hours and other terms and conditions of employment.'" *Id.* at 247, 306 A.2d at 414–415 (dissenting opinion).

Where provisions of a statute appear to be ambiguous or inconsistent, the intention of the legislature may be determined by examining the occasion, reason or necessity for the law. Thus, we should look to the circumstances that existed at the time of the enactment and determine the mischief sought to be remedied or the object to be obtained in its passage. Statutory Construction Act, 1 Pa.C.S. § 1921(c) (Pamphlet 1973); see also *Martin Estate,* 365 Pa. 280, 74 A.2d 120 (1950); *Phipps v. Kirk,* 333 Pa. 478, 5 A.2d 143 (1939); *Orlosky v. Haskell,* 304 Pa. 57, 155 A. 112 (1931). Prior to the passage of Act 195 the prior law prohibited all strikes by public employes and did not require collective bargaining by public employers.[4] The chaotic climate that resulted from this obviously intolerable situation occasioned the creation of a Governor's Commission to Revise the Public Employe Law of Pennsylvania. This commission, which is commonly referred to as the Hickman Commission, issued a report recommending the repeal of the then existing law and the passage of new law which would permit the right of all public employes to bargain collectively. In recommending this change the commission suggested the need for collective bargaining to restore harmony in the public sector and to eliminate the numerous illegal strikes and the widespread labor unrest.

> "The 1947 Act does not require public employers to bargain collectively with their employes. This has led

4. See Act of June 30, 1947, P.L. 1183, 43 P.S. § 215.1 et seq.

to an almost complete breakdown in communication where the public employer has not chosen to recognize the right of its employes to bargain collectively. In our judgment, this inability to bargain collectively has created more ill will and led to more friction and strikes than any other single cause."

The declaration of policy contained in Act 195, section 101 clearly establishes that the legislature concurred with the commission's belief that the right to collective bargaining was necessary to promote orderly and constructive relationships between public employers and employes.[5]

▮ In this setting we are forced to conclude that the legislature at the time of the passage of Act 195 fully recognized that the right of collective bargaining was crucial to any attempt to restore harmony in the public sector. It would be absurd to suggest that the legislature deliberately intended to meet this pressing need by providing an illustory right of collective bargaining. Statutory Construction Act, 1 Pa.C.S. § 1922(1) (Pamphlet 1973).

5. ". . . it is the public policy of this Commonwealth and the purpose of this act *to promote orderly and constructive relationships between all public employers and their employees* subject, however, to the paramount right the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare. Unresolved disputes between the public employer and its employes are injurious to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. . . . [T]he General Assembly has determined that *the overall policy may best be accomplished by (1) granting to public employes the right to organize and choose freely their representatives; (2) requiring the public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; . . . .*" Act 195, section 101. (Emphasis added)

## II.

▮ Section 702, when read in conjunction with section 701, requires us to distinguish between the area of managerial prerogative and the areas of vital concern to employes.[6] The Commonwealth Court's premise that any interpretation of sections 701 and 702 must recognize the dominance of a legislative intention to preserve the traditional concept of inherent managerial policy emasculates section 701 and thwarts the fulfillment of the legislative policy sought to be achieved by the passage of the Act.[7] Further, such a view ignores the fact that the acceptance of the Hickman Commission's recommendation and the passage of Act 195 was a repudiation of the traditional concept of the sanctity of managerial prerogatives in the public sector. The introduction of a concept of mandatory collective bargaining, regardless of how narrowly the scope of negotiation is defined, necessarily represents an encroachment upon the former autonomous position of management. Further, the Hickman Commission's recognition of the need for collective bargaining to produce stability in the public sector argues against an inference that they intended their recommendation[8] to be con-

6. For a general discussion concerning the problems created in Pennsylvania relating to teacher-board relations by section 702, see Comment, "The Public Employe Relations Act and Pennsylvania Teachers: A Legal Analysis in Light of the January, 1971 Pittsburgh Dispute", 10 Duquesne L.Rev. 77 (1971).

7. ". . ., following the reasoning of the majority, I believe it would be relatively easy for me to argue that almost everything touching upon teachers' employment could be argued to be a matter of 'inherent managerial policy'. If that is the result of the tact taken by the majority in analyzing what is meant by 'inherent managerial policy', then I believe the legislative intent of Act 195 will have been thwarted." *Pa.L.R.B. v. State College Area School District, supra* at 248, 306 A.2d at 415 (Dissenting Opinion).

8. "Bargaining should be permitted with respect to wages, hours, and conditions of employment, appropriately qualified by a recognition of existing laws dealing with aspects of the same subject matter and by a carefully defined reservation of managerial rights."

strued as suggesting something less than a viable bargaining process in the public sector. The necessity for qualifications to adjust private sector concepts to meet the needs of the public sector does not justify the conclusion that the qualifications should be interpreted in a manner that would strip the bargaining provision of any meaning. We recognize the principle that a statute is never presumed to deprive the State of any prerogative or right unless the intention to do so is clearly manifest. *Hoffman v. Pittsburgh*, 365 Pa. 386, 75 A.2d 649 (1950). However, the passage of Act 195, in our view, expresses a manifest intention to create a sufficiently vital collective bargaining process capable of meeting the need to restore harmony within the public sector.

> "The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth *and the purpose of this act* to promote orderly and constructive relationships between all public employers and their employes   .   .   .
>
> .   .   .   .   .   .   .   .
>
> .   .   .   the General Assembly has determined that the overall policy may best be accomplished by .   .   .   (2) requiring public employers to negotiate and bargain   .   .   ." Art. I, § 101.

The majority in the Commonwealth Court and some of the briefs filed in this Court attempt to equate the preservation of the inherent managerial policy as synonymous with the public interest and the concern of the employes as a private interest. Proceeding from this premise it is asserted that the private interest must give way before the public good. This reasoning is offered to provide the basis for their premise, the dominance of the legislative intention to preserve managerial prerogatives. This argument fails to perceive that the true public interest is the effective and efficient operation of public employment and that collective bargaining as well as managerial prerogatives are only significant insofar as

they further this objective. In view of the recognized importance of a meaningful system of collective bargaining in maintaining harmony and order in the public sector an interpretation of section 702 that would virtually eclipse the legislative intent expressed in section 701 would render a real disservice to the true public interest.

A determination of the interrelationship between sections 701 and 702 calls upon us to strike a balance wherein those matters relating directly to "wages, hours and other terms and conditions of employment" are made mandatory subjects of bargaining and reserving to management those areas that the public sector necessarily requires to be managerial functions. In striking this balance the paramount concern must be the public interest in providing for the effective and efficient performance of the public service in question. The Supreme Court of Kansas was recently required to consider this problem. *National Education Ass'n of Shawnee Mission, Inc. v. Board of Education of Shawnee Mission Unified School District No. 512,* 212 Kan. 741, 512 P.2d 426 (1973). In that decision the Court was confronted with a dispute between a teachers' association and the board of education. In resolving questions relating to the scope of negotiations provided under their statute they recognized that "terms and conditions" which were negotiable under the terms of the statute as something more than minimal economic terms of wages and hours, but something less than the basic educational policies of the board of education. That Court suggested that the courts of that jurisdiction should resolve these issues on a case-by-case basis. As has been indicated, we also agree with the wisdom of this approach at this time. Further, the Kansas Court suggested:

> "The key, as we see it, is how direct the impact of an issue is on the well-being of the individual teacher, as opposed to its effect on the operation of the school system as a whole." *Id.* at 753, 512 P.2d at 435.

We believe that the suggested test is helpful in attempting to strike the balance between sections 701 and 702 of our statute. We recognize that in many instances the line will be difficult to draw,[9] however, if we remain ever mindful that our paramount concern in this area is the public interest, no situation will be insoluble.

Thus we hold that where an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining under section 701 simply because it may touch upon basic policy. It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole. If it is determined that the matter is one of inherent managerial policy but does affect wages, hours and terms and conditions of employment, the public employer shall be required to meet and discuss such subjects upon request by the public employe's representative pursuant to section 702.

## III.

The relationship between sctions 701 and 703 is particularly significant in a highly regulated area such

9. "To decide whether the rest of the items in question (a) are mandatory subjects of negotiation, we must direct our attention to the phrase 'conditions of employment.' This problem would be simplified greatly if the phrase 'conditions of employment' and its purported antithesis, educational policy, denoted two definite and distinct areas. Unfortunately, this is not the case. Many educational policy decisions make an impact on a teacher's conditions of employment and the converse is equally true. There is no unwavering line separating the two categories." *West Hartford Education Ass'n. v. DeCourcy,* 162 Conn. 566, 581, 295 A.2d 526, 534 (1972).

as public education.   Article 3, Section 14 of the Pennsylvania Constitution, P.S., provides:

> "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth."

Under the Public School Code of 1949 [10] the General Assembly provided a comprehensive system to meet the educational needs of the citizens of this Commonwealth. In so doing, school districts were created as an agency of the State charged with the responsibility of administering the educational program within its assigned territory. *Slippery Rock Area Joint School System v. Franklin Twp. School Dist.*, 389 Pa. 435, 133 A.2d 848 (1957).   To enable the school districts to discharge this constitutional mandate, the General Assembly vested in the school districts the necessary powers.   Public School Code of 1949, *supra*, § 2–211.   The majority of the Commonwealth Court reasoned that the duties and prerogatives imposed upon and granted to school boards under the Public School Code of 1949, and other pieces of legislation could not be the subject of collective bargaining under the terms of section 703.   We cannot agree.

The mere fact that a particular subject matter may be covered by legislation does not remove it from collective bargaining under section 701 if it bears on the question of wages, hours and conditions of employment.   We believe that section 703 only prevents the agreement to and implementation of any term which would be in violation of or inconsistent with any statutory directive.   The distinction between this view and that expressed by the majority of the Commonwealth Court (as we understand it) is best illustrated by an example.   Under section 1142 of the Public School Code, a minimum salary scale is set forth.   Section 1151 provides that school boards may pay

10.   Act of March 10, 1949, P.L. 30, art. I, § 101 et seq.; 24 P.S. § 1–101 et seq.

salaries in excess of the minimum salary. Framing the issue in accordance with the formulation suggested by the majority in the Commonwealth Court, section 1142 created a duty not to pay below the minimum scale and section 1151 granted the employer the prerogative to pay more than the minimum rate. Clearly, the parties are precluded from agreeing to a rate lower than the minimum scale but even though the statute vested in the public employer the prerogative to pay a higher rate, to do so as a result of collective bargaining is not "in violation of, or inconsistent with, or in conflict with" the statute in question. The mere fact that the General Assembly granted the prerogative to the employer does not exclude the possibility that the decision to exercise that prerogative was influenced by the collective bargaining process.

The fallacy in the view expressed by the Commonwealth Court's majority is the failure to perceive the distinction between the "inherent managerial prerogative" concept set forth in section 702 and the thrust of section 703. The purpose of section 703 was not to further define "inherent managerial policy" but to recognize that Act 195 did not affect the continuing vitality of existing law at the time of that Act's passage. Thus, the fact that a prerogative was statutorily recognized under section 1151 does not mandate that it be included within the "inherent managerial policy" concept of section 702. That determination rests solely on the considerations suggested in our discussion under Part II of this Opinion. Section 703 merely prevents a term of a collective bargaining agreement from being in violation of existing law. Cf. *Board of Education, City of Englewood v. Englewood Teachers Ass'n.*, 64 N.J. 1, 311 A.2d 729 (1973); *Board of Education of Union Free School District # 3 v. Associated Teachers of Huntington, Inc.*, 30 N.Y.2d 122, 282 N.E.2d 109 (1972); *Joint School District # 8 v. Wisconsin Employment Relations Board*, 37 Wis.2d 483, 155 N.W.2d 78 (1967). If however the General Assem-

bly mandates a particular responsibility to be discharged by the board and the board alone, then the matter is removed from bargaining under section 701 even if it has direct impact upon "wages, hours and other terms or conditions of employment." The removal from collective bargaining results not because it necessarily falls within the purview of section 702 (in fact it may clearly be within the scope of section 701), but rather because to do otherwise would be in direct violation of a statutory mandate and thus excluded under section 703. Cf. *West Hartford Education Ass'n v. DeCourcy, supra,* 162 Conn. at 577, 295 A.2d at 533.

We therefore conclude that items bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions explicitly and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment.

### IV.

The areas of bargaining that are in issue in this lawsuit provide a wide spectrum of concern.[11] It is, how-

11. The items in issue are as follows: 1) The availability of proper and adequate classroom instructional printed material; 2) The provision for time during the school day for team planning of required innovative programs; 3) The timely notice of teaching assignment for the coming year; 4) Providing separate desks and lockable drawer space for each teacher in the district; 5) Providing cafeteria for teachers in the senior high school; 6) Eliminating the requirement that teachers perform nonteaching duties such as but not limited to hall duty, bus duty, lunch duty, study hall, and parking lot duties; 7) Eliminating the requirement that teachers teach or supervise two consecutive periods in two different buildings; 8) Eliminating the requirement that teachers substitute for other teachers during planning periods and teaching in noncertificated subject areas; 9) Eliminating the requirement that teachers chaperone athletic activities; 10) Eliminating the requirement that teachers unpack, store, check or otherwise handle supplies; 11) Providing that there shall be one night each week free for Association meetings; 12) Providing that a teacher will, without prior notice, have free access to his personnel file; 13) Permitting a teacher to leave the building any time during the school day unless he has a teaching assignment; 14) Providing

ever, clear that there has been significant disagreement as to the principles to be applied in determining the applicability of section 701. As noted by Judge Kramer, the wording of many of the items in issue is ambiguous and difficult to categorize in accordance with the principles set forth herein. It is clear that many of the items were framed in terms of the objective sought to be obtained as opposed to the issue sought to be negotiated. We assume the reason for the artless framing of the issues was as a result of the general confusion which prevailed in the area. We also believe that the Pennsylvania Labor Relations Board should have an opportunity to again re-assess the respective positions of the parties in light of the principles set forth herein.

We therefore remand the cause to the Pennsylvania Labor Relations Board for further proceedings consistent herewith, granting leave to each party to modify and amend their position as they may wish.

POMEROY, J., filed a concurring opinion in which JONES, C. J., joined.

EAGEN, J., filed a dissenting opinion.

special teachers with preparation time equal to that provided for other staff members; 15) Provision for maximum class sizes; 16) Provision that the Association will be consulted in determining the school calendar; 17) Provision that school will officially close at noon of the last day of classes for Thanksgiving, Christmas, Spring and Summer vacation; 18) Provision that at least one-half of the time requested for staff meetings be held during the school day;

. . . . . . .

20) A provision that the present Tuesday afternoon conference with parents be abolished and teachers hold conferences with parents by appointment at a mutually convenient time; 21) Provision that secondary teachers not be required to teach more than 25 periods per week and have at least one planning period per day; and 22) A provision that elementary teachers shall have one period or fifteen minutes per day for planning purposes.

POMEROY, Justice (concurring).

I agree in general with the opinion of the Court, but write this separate statement in an attempt to place in perspective certain aspects of the problems presented as they appear to me.

John Chipman Gray well said that interpretation of statutes is "one of the most difficult of a judge's duties." Gray, Nature and Sources of Law, Section 370. Many other legal scholars have, of course, made similar observations. This case is a striking illustration of the truth of that statement. The problem, of course, is that courts are called upon to ascertain the "intention of the legislature." Where the legislature has had a real intention, one way or another, on a point, it usually expresses it clearly and there is no doubt about it. But when the legislature has had no specific meaning on a point, or when the question presented never occurred to it, the difficulties arise. *See* op. cit. *supra;* J. Landis, A Note on "Statutory Interpretation," 43 Harv.L.Rev. 886 (1930).

In this case the legislature, through its declaration of policy, did make clear its general intent, namely, to provide for the orderly and peaceful settlement of labor disputes in the so-called "public sector" by means of collective bargaining, mediation and arbitration, and by establishing the right of employees to strike when all else fails. The specific intent, however, as to what subjects are within the scope of collective bargaining, is, to say the least, elusive. While the title of the PERA refers to "defining the scope of collective bargaining," see 43 P.S. 1101.101, note, the text of the Act on this subject seems to speak with two voices. Whereas Sec. 701 grants the right to bargain with respect to "wages, hours and other terms and conditions of employment," the following section, Sec. 702, stipulates that the right does not extend to "matters of inherent managerial policy." This, of course, is the troublesome phrase. These matters are de-

fined to include, but are not limited to, "such areas of discretion or policy as the functions and programs of the public employer, standards of services, its [the employer's] overall budget, utilization of technology, the organizational structure and selection and direction of personnel." 43 P.S. § 1101.702. The section goes on, however, to require employers to "meet and discuss" (as distinguished from bargaining about) policy matters which affect wages, hours and terms and conditions of employment and "the impact thereon." *Ibid.* The precise question presented by these appeals is the scope of Sec. 702, which in turn, of course, affects the scope of Sec. 701.[1]

Given the vagueness of the terms with which we must deal, there is no room, as I see it, for dogmatism; the courts can but strive as best they can to reach a result which comes closest to giving effect to what they find to be the legislative intent.[2] This the courts below sought

1. Sec. 703, in my view, while a limitation on the scope of Sec. 701, is not unclear. Quite simply, an agreement between the collective bargaining parties is forbidden to contain a provision the implementation of which "would be in violation of, or inconsistent with, or in conflict with any statute" or home rule charter. 43 P.S. § 1101.703. While in a particular case there may be disagreement as to whether such violation, inconsistency or conflict would be present, the legislative intent is clear enough. Thus I cannot agree with the majority opinion statement that items are excluded from Sec. 701 bargaining by Sec. 703 only where another statute "explicitly and definitively prohibit[s] the public employer from making an agreement" as to that item. There is no warrant for this rewriting of that section.

2. Judge Campbell, in speaking for the Court of Common Pleas of Center County, indicated the difficulties of the task of judicial interpretation presented by this case as follows:
"What, then, is the scope of bargaining under Act 195? Depending upon one's personal point of view and with strict construction, all specific items could be classified either as bargainable or as subjects requiring only the duty to meet and discuss. No one specific item is all black or white and each contains substantial gray areas. This is recognized in the last sentence of Section 702 which provides *that policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon* are in that category which requires the parties to meet and discuss. We must, therefore, carefully

to do, and I cannot subscribe to the majority's character-
ization of the painstaking opinion of the Commonwealth
Court as one which "emasculates" the legislative intent.
See Opinion of the Court, ante, at 267.[3]

As to the main thrust of the Court's opinion, that Act
No. 195 should be so construed as to afford a viable
framework for meaningful collective bargaining in the
public sector, I am in complete agreement, for this is nec-
essary to accomplishment of the public policy announced
by the legislature. I also agree that this requires a bal-
ancing approach, and that in striking the balances undue
emphasis must not be placed on either Sec. 702 or Sec.
703 of the Act, lest the innovative provision of Sec. 701
be lost in the shuffle. Thus, as the Court's opinion
states, an item of dispute must not be removed from the
orbit of bargaining under Sec. 701 "simply because it
may touch upon basic policy." I have difficulty, how-
ever, with the Court's statement that the Board is to "de-
termine whether the impact of the issue on the interest
of the employe in wages, hours and terms and condi-
tions of employment outweighs its probable effect on the
basic policy of the system as a whole." Opinion of the
Court, ante at 268, for I fear that in application this
directive may prove no more lucid than the words of the
Act of which we strive to give meaning. I am not sure
how one identifies the "interest" of the employe in

> determine the basic purpose and philosophy of the legislation
> in order to do justice to the parties involved and to carry out
> the intent and purpose of the act." R. 542a.

3. The majority also, in my view, exaggerates the differences be-
tween the Commonwealth Court majority and the dissenters. Of
the 21 items proposed for bargaining, the Board had held 5 to be
proper subjects, and 16 not. The Court of Common Pleas held
none of the 21 items to be negotiable, and the Commonwealth
Court agreed. The dissenters there concurred "in the legal analy-
sis and rationale" of the majority, but found that this analysis,
properly applied, required collective bargaining as to two of the
21 items (Nos. 3 and 22). (One of these, No. 3, had been found by
the Board to be negotiable, while No. 22 had been found non-ne-
gotiable).

wages, hours and conditions of employment, determines the "impact" of a particular issue upon such an interest, or weighs that impact against "probable effect on the basic policy of the system as a whole." I venture to suggest that the governing test might preferably be formulated as follows:

As to each item of potential dispute, (i. e., the items put forward in a request for bargaining) the factors to be balanced in determining the susceptibility of an item to collective bargaining are the probable effects of the granting or refusal of the item upon (a) the individual performance by the teachers of their duties as such, and upon (b) the school board's overall operation of an educational system within its district. If the effect of the granting or denial of a request would be more direct, immediate and substantial upon the teachers' individual performance of their duties than it would be upon the school board's overall operation of an educational system, the item should be considered negotiable. On the other hand, if the effect would bear more directly, immediately and substantially upon the school board's overall operation of an educational system, the opposite result should obtain—i. e., the item should be considered non-negotiable. Such balancing, of course, should be made with due regard for those areas of discretion or policy which by the terms of Sec. 702 are expressly included within the phrase "inherent managerial policy."

Reading the Board's "nisi decision" and its "final order," in this case, I am not at all certain that its approach differed in any material way from that which the Court now directs. However that may be, the Court's opinion does not undertake to consider the specific issues involved in this litigation. (The items about which the teachers seek to bargain are merely listed in footnote 11 at the end of the opinion). The Court's mandate is thus much like granting a "new trial" without telling the tri-

bunal which must conduct it and the courts which, if called upon, must review the new result whether and wherein they erred as to any particular issue at the first "trial." There is a risk, therefore, that to remand rather than decide the specific items of dispute which were addressed by the courts and Board below may prove to be a waste both of manpower and of time, and be but a postponement of the day when this Court will have to make the ultimate resolution. While normally such a course is to be avoided, I agree that the risk is worth taking in this case. The Pennsylvania Public Relations Board has more familiarity with the problems of school administration as they concern labor relations than does this Court. It is possible that no further recourse to the courts in this case will be necessary, and that in any event the issues requiring judicial attention may be substantially narrowed by a reconsideration in the light of the Court's opinion.

JONES, C. J., joins in this opinion.

EAGEN, Justice (dissenting).

I cannot subscribe to the views expressed in Part II or Part III of the opinion filed by Mr. Justice Nix. He fails to give proper weight to Section 702 of Act 195 and, in effect, nullifies it. In fact, if the Legislature intended to give public employees the sweeping, all-encompassing collective bargaining rights that Mr. Justice Nix indicates, enactment of Section 702 was the height of futility.

After reviewing the instant record, it is my personal view that the conclusions and ruling of the Pennsylvania Labor Relations Board reasonably comport with the intent of the Legislature when it enacted Act 195. Moreover, the expertise of the Board in this class of case should be recognized and its conclusions sustained absent

substantial error. I, therefore, would reverse the Order of the Commonwealth Court and reinstate and affirm the Order of the Board.