590 A.2d 849

**In re Nomination Petition of James GRANAT, as Candidate for the Democratic Nomination for the Office of School Director of Penncrest School District.**

**Appeal of PENNCREST SCHOOL DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 22, 1991.

Decided April 29, 1991.

Theodore H. Watts, Watts and Pepicelli, P.C., Meadville, for appellant.

James W. Granat, with him, Brian J. Lindsay, Meadville, for appellee.

Before CRAIG, President Judge, PELLEGRINI, J., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The facts giving rise to this matter are not in dispute. The last day for filing nominating petitions for the primary election to be held on May 21, 1991 was March 12, 1991. James Granat (Granat) on March 12, 1991, filed two nominating petitions with the Crawford County Board of Elections to have his name appear on both the republican and democratic party ballots in the May 21, 1991 primary election for each party's nomination for the office of school director for the Penncrest School District (Penncrest). Included with the nominating petitions was a statement of financial interest of Granat.[1] Granat, at all times relevant herein, did not file a statement of financial interest with the governing authority of Penncrest.

Penncrest timely petitioned the trial court to set aside the two nominating petitions of Granat, alleging that Granat failed to timely file a statement of financial interest with the governing authority of Penncrest in violation of Section

[1] The propriety of procedures of Granat filing his nominating petitions with the Crawford County Board of Elections is not before us.

4(b)(2) and (3) of the Pennsylvania Public Officials and Ethics Law (Ethics Act).[2]

A hearing was conducted by the trial court after which it filed an opinion and order on March 27, 1991 whereby it (1) denied Penncrest's petition requesting to set aside the nominating petition of Granat, and (2) directed the Crawford County Board of Elections to include the name of Granat as a candidate for both the republican and democratic nominations for school director in Penncrest. The trial court further stated that "This Order shall only be effective provided the said James Granat files the necessary Statement of Financial Interest with the Penncrest School District Office within seven (7) working days of the date of this Order."[3]

Penncrest filed a timely appeal from the trial court's order. Penncrest presents two issues in its statement of questions involved: (1) does Penncrest have standing to challenge the nomination petitions of Granat,[4] and (2) were the nomination petitions of Granat fatally defective by his failure to timely file a statement of financial interest with Penncrest.

We affirm the trial court's denial of Penncrest's petition requesting to set aside the nominating petitions of Granat

2.  Act of October 4, 1978, P.L. 883, No. 170, *as re-enacted and amended,* June 26, 1989, P.L. 26, 65 P.S. §§ 404(b)(2) and 404(b)(3).
     Section 4(b)(2), 65 P.S. 404(b)(2), provides:
     (2) Any candidate for county-level or local office shall file a statement of financial interests for the preceding calendar year with the governing authority of the political subdivision in which he is a candidate on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall also be appended to such petition.
     Section 4(b)(3), 65 P.S. 404(b)(3), provides:
     (3) [F]ailure to file the statement in accordance with the provisions of this act shall ... be a fatal defect to a petition to appear on the ballot.

3.  At oral argument counsel informed the Court that Granat had filed the statement of financial interest, as directed, within the time fixed by the trial court.

4.  The issue of standing was not addressed by the trial court in its opinion, but the issue was raised and briefed in the trial court and is properly before us.

but for different reasons, which follow.[5]

██ We will first address the issue of Penncrest's standing to bring and maintain this proceeding. Penncrest brought its petition under section 977 of the Pennsylvania Election Code [6] which details the time and procedures for a challenge to nominating petitions; however, neither this section nor any other section of the Election Code designates who may file objections to a nominating petition or who has standing to initiate and maintain a challenge. *See In re Barlip*, 59 Pa.Commonwealth Ct. 178, 428 A.2d 1058 (1981). Likewise, the Ethics Act contains no provision designating who may file a challenge to a nominating petition where there is noncompliance with section 4(b)(2), *supra*.

Penncrest argues that section 11[7] of the Ethics Act "conveys the legislature's intention that governmental units at any level are conferred with the implied responsibility to insure compliance with the Act." Section 11 provides:

Any governmental body may adopt requirements to supplement this act, provided that no such requirements shall in any way be less restrictive than the act.

For at least two reasons Penncrest's argument is flawed. To hold as argued by Penncrest would require a torturous construction of section 11 of the Ethics Act in violation of every principle of statutory construction. Secondly, section 11 states that a government body "may adopt requirements to supplement this Act." Penncrest has not set forth in the record before us or in its brief, what, if any, "requirements" Penncrest adopted to "supplement this Act" so as to give it the standing it argues for. Penncrest's argument is revealing in that it is an acknowledgement by Penncrest that if it, as a school district, is to have standing to

---

**5.** *Appeal of Harbucks, Inc.*, 126 Pa.Commonwealth Ct. 591, 560 A.2d 851 (1989) (Decision of trial court may be affirmed on appeal when result is correct even though ground relied upon for decision is incorrect.)

**6.** Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2937.

**7.** 65 P.S. § 411.

challenge nominating petitions of candidates, its standing must be given by the legislature.

That a school district's power and authority flows solely from the legislature is bottomed on Article 3, Section 14 of the Pennsylvania Constitution, which provides:

"The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth."

To meet this constitutionally imposed mandate, the legislature created school districts.

That a school district only has such powers and authority as given to it by the legislature was clearly established by the Supreme Court in the case of *Slippery Rock Area Joint School System v. Franklin Township School District*, 389 Pa. 435, 442, 133 A.2d 848, 852 (1957), wherein the Supreme Court adopted the opinion of Judge Rodgers of the Court of Common Pleas of Butler County, who wrote:

"First, it should be remembered that our entire school system is but an agency of the State Legislature—maintained by them to carry out a constitutional duty. It has been said that 'our common school system was not adopted in this State as it exists today, until many years after the Revolution, through the Constitution of 1776, 1790, and 1838, and the laws recognized its virtually important part in our existence.' After Thaddeus Stevens' and Governor Wolf's famous crusade for education, our schools became an integral part of our governmental system, as a State institution: the Constitution of 1874 fortified it and directed the legislature to maintain a 'thorough and efficient system of public schools'. Article 10, Section 1. The school system, or the school district, then, are but agencies of the state legislature to administer this constitutional duty. *Wilson v. Philadelphia School District*, 328 Pa. 225, 230 [195 A. 90, 113 A.L.R. 1401].

"Within that school system, a school district is an agency of the State, created by law for the purpose of

promoting education, deriving all of its powers from the statute, and discharging only such duties as are imposed upon it by statute. The school district is an agency of the State charged with the sovereign duty of building and maintaining the schools within its particular territory and with the further duty of securing, managing, and spending the necessary funds in the interest of public education. . . . "

In *Pennsylvania Federation of Teachers v. School District of Philadelphia*, 506 Pa. 196, 199–200, 484 A.2d 751, 753, (1984), the Supreme Court by Chief Justice Nix,. in rejecting the Commonwealth's claim that local school districts are not a part of the state but instead are independent employers, stated:

The Commonwealth's contention must be rejected. It is well established that the local school districts are merely agents of the Commonwealth to which the legislature has delegated authority in order to fulfill the state's responsibility to provide public education. *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 211 A.2d 487 (1965); *Barth v. Philadelphia School District*, 393 Pa. 557, 143 A.2d 909 (1958); *Slippery Rock Area Joint School System v. Franklin Township School District*, 389 Pa. 435, 133 A.2d 848 (1957); *Wilson v. Philadelphia School District*, 328 Pa. 225, 195 A. 90 (1937); *Smethport Area School District v. Bowers*, 219 Pa.Super. 269, 280 A.2d 632 (1971).

Because of a school district being the administrative arm of the legislature, its authority springs only from legislative enactments. It is clear from a review of the Election Code, the Ethics Act and the Public School Code of 1949 [8] that the legislature has not granted any authority, either directly or inferentially, to school districts to challenge for any reason, the nominating petitions of persons seeking the nomination of a political party in a primary election to be a political

**8.** Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702.

party's candidate for the office of school director. Since the legislature has not deemed to grant such authority to a school district, the judiciary is precluded from doing so.

Penncrest, being without statutory authority to challenge the nominating petition of Granat, lacked standing to initiate and maintain this proceeding. By reason of our determination that Penncrest lacks standing, we need not address the second issue raised by Penncrest.

## ORDER

AND NOW, this 29th day of April, 1991, the order of the trial court denying Penncrest School District's petition to set aside the nominating petitions of James Granat and directing the Crawford County Board of Elections to include the name of James Granat as a candidate for both the republican and democratic nominations for school district in the Penncrest School District is affirmed.

PELLEGRINI, Judge, dissenting.

I dissent. The majority holds that the School District lacks standing to challenge the Nominating Petitions of candidates for office who fail to file Statements of Financial Interest required to be filed by the Ethics Act.[1] I believe the majority's decision is in conflict with *Commonwealth State Ethics Commission v. Baldwin,* 66 Pa.Commowealth Ct. 40, 444 A.2d 767, *affirmed,* 498 Pa. 255, 445 A.2d 1208 (1982).

Prior to the 1989 amendments, all Statement of Financial Interest forms were required to be filed by the candidates with the State Ethics Commission.[2] Addressing whether

**1.** Act of October 4, 1978, P.L. 883, No. 170, *as re-enacted and amended,* June 26, 1989, P.L. 26, 65 P.S. §§ 401–413.

**2.** Section 4(b) of the "old" Ethics Act provided:

Each candidate for public office shall file a Statement of Financial Interests for the preceding calendar year with the Commission prior to filing a petition to appear on the ballot for election as a public official. A petition to appear on the ballot shall not be accepted by an election official unless the petition includes the affidavit that the

the Ethics Commission had standing, this Court stated in *Baldwin:*

"Section 4(b) of the Ethics Act sets out the requirement that a candidate who fails to file a Financial Interest Statement with the Commission in the proper manner may not have his or her name placed on the Ballot and may not take office or receive compensation from the public funds for performing duties of the office concerned ..." We believe that there is a duty consequently imposed upon the Commission to ensure that proper filings are made and we must therefore conclude that the Commission has the power and standing to challenge nomination petitions in a manner utilized here so as to enforce the provisions of the Ethics Act in a timely fashion.

66 Pa.Commonwealth Ct. at 44–45, 444 A.2d at 769. Even though it reversed on other grounds,[3] the Supreme Court upheld that holding. Neither opinion cited any other provisions of the Ethics Act other than Section 4(b) to give the Ethics Commission standing. My examination of that Act, including Section 7, 65 P.S. § 407, setting forth the Ethics Commission's powers and duties, reveals no specific powers conferred on the Ethics Commission to challenge a candidate's nominating petition.

In 1989, the General Assembly amended the Ethics Act to provide that local candidates would file Statements of Financial Interest with the political subdivision with which they were seeking office and only candidates for statewide office would continue to file with the Ethics Commission. Section 4(b) now reads:

(b)(1) Any candidate for a State-level public office shall file a statement of financial interests for the preceding

candidate has filed the required statement of financial interests with the Commission. 65 P.S. 404(b).

**3.** The Supreme Court in *Baldwin* stated that an additional question was raised as to the legal authority of the Ethics Commission to institute this action. We agree with the Commonwealth Court that the power to bring this suit fell within the implicit authority conferred to permit that body to carry out the stated purposes of the Ethics Act. 498 Pa. at 259–260, 445 A.2d at 1210.

calendar year with the commission on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall also be appended to such petition.

(2) Any candidate for county-level or local office shall file a statement of financial interests for the preceding calendar year with the governing authority of the political subdivision in which he is a candidate on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall be appended to such petition.

(3) No petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a statement of financial interests as set forth in paragraphs (1) and (2). Failure to file the statement in accordance with the provisions of this act shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot.

If, under Section 4(b), "a duty [is] ... imposed upon the Commission to ensure that proper filings are made" to give them standing to challenge candidates' nominating petitions, then that duty also devolves to the political subdivision by the 1989 amendments to the Ethics Act. The language of old Section 4(b) is substantially the same as new section 4(b), except for the split in responsibility between the Ethics Commission and political subdivisions. Just as that provision gave authority to the Ethics Commission to challenge the nominating petitions in *Baldwin,* it also gives that authority to the School District to challenge the nominating petitions. To hold that the Ethics Commission has standing while a political subdivision does not, is at odds with *Baldwin,* not to mention logically inconsistent.[4]

---

**4.** Section 4(d) of the Ethics Act, 65 P.S. 404(d), lends no support to the majority's position that it can be filed later. The term "public official" includes both elected and appointed officers. It requires that "elected officers" who are filling an unexpired term and appointed officers must file an ethics form prior to assuming office.

Absent our Court's and the Supreme Court's holding in *Baldwin,* I would hold that neither the Ethics Commission nor a political subdivision has standing to challenge a nominating petition of a candidate. The Statements of Financial Interest filed prior to an election are not filed for their benefit, but instead, for that of the electorate, who votes on the candidates. Consequently, I believe an elector is the only person who has standing to challenge a candidate's nominating petition.

However, because I am bound by the *Baldwin* decision, I believe under the rationale of that decision that the School District has standing to challenge James Granat's failure to file the required Statement, and because under Section 4(b)(3) failure to file is no longer curable (*see In Re: Nomination Petition of William Baranyai, Jr. for the Nomination of the Democratic Party for Councilman of the Borough of Millvale, Allegheny County, Pennsylvania, Donald Andrezjwski and John F. Kearney, Appellants,* 139 Pa.Commonwealth Ct. 320, 590 A.2d 824 (1991)), I would set aside his Nominating Petition.