Mary Robinson et al. *v.* Abington Education Association and Mike Mecklowitz et al.

Abington Education Association, Mike Mecklowitz, Richard Brady, Sam Russell, Roy Corkadel, Kenneth Silver and Nancy Bickley, Appellants.

Argued October 4, 1977, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers and Blatt.

Richard W. Rogers, with him Rogers, King & Cole, for appellant, Abington Education Association.

Robert A. MacDonnell, with him Obermayer, Rebmann, Maxwell & Hippel, for appellant, Abington School District.

Manuel Grife, with him Gever and Grife, for appellees.

OPINION BY JUDGE ROGERS, December 5, 1977:

The Abington Education Association, a union of employes of the Abington School District, has appealed from an order of the Court of Common Pleas of Montgomery County granting equitable relief to the instant appellees, a group of the Association's members composed of special education teachers and home and school visitors of the School District.

The appellees aver in their amended complaint, in which both the Association and the School District are

named as defendants, that the Association was the collective bargaining representative for the employes of the School District, including the plaintiffs; that in the past the plaintiffs had received a salary premium because of their special responsibilities in teaching exceptional children; that the Association and School Board had negotiated a collective bargaining agreement voiding their salary premiums; that the elimination of their salary premiums was at the insistence of the Association; that the elimination of the premiums in this manner was a violation of the Public School Code of 1949;[1] and that the actions of the Association in insisting in the course of bargaining with the School District on the elimination of their salary premiums was unfair. The relief sought was that the defendants be restrained from giving effect to the collective bargaining agreement and that the Association be directed to meet with the Board and agree to the inclusion of the accustomed premiums in the collective bargaining agreement.

The Association filed preliminary objections which were overruled. The School Board filed an Answer. The Association filed an Answer, and an Amended Answer with New Matter. The plaintiffs filed a Reply to New Matter. Stipulations were filed of record, which provided that the plaintiffs would withdraw an application for a preliminary injunction and that the Association and School Board might execute the collective bargaining agreement and put it into effect without provision for the plaintiffs' salary premiums, subject to reinstatement of the premiums if the case on the merits should be decided for the plaintiffs.

After trial on the merits, the chancellor made the following findings of fact:

---

[1] Act of March 10. 1949, P.L. 30. *as amended*, 24 P.S. §§1-101 et seq.

5. The Special Education Teachers are engaged in the task of teaching and managing various levels of retarded children in order to prepare them for a place in society in keeping with their own potential.

6. The Home and School Visitors act as liasons between home and school and community in order to resolve those student problems wherein communication and cooperation between the three are helpful and necessary.

. . . .

9. That after the passage of Act 195 [on July 23, 1970], the Abington Education Association was certified by the Pennsylvania Labor Relations Board as the professional employees bargaining representative which unit was comprised of all teachers, including Special Education Teachers and Home and School Visitors.

10. Until the school year 1973-1974, every annual agreement providing for compensation for the *Special Education Teachers* commencing with at least the 1963-1964 school year contained provision for a salary differential, in addition to the teacher's base salary in recognition of this special assignment.

11. Since the school year of 1971-1972, the position differential increment for *Special Education Teachers* was five (5%) percent of their base salary.

12. Until the school year 1973-1974, every annual agreement providing for compensation for the *Home and School Visitors* commencing with the 1968-1969 school year contained provisions for a salary differential in addition to the teacher's base salary in recognition of their special assignment.

13. Since the school year of 1971-1972, the position differential increment for *Home and School Visitors* was three (3%) percent of their base salary.

14. That the 1973-74 Negotiated Contract did not provide for differential payments to Special Education Teachers nor to Home and School Visitors.

15. That the Association commenced negotiating for the 1973-74 school year in January, 1973.

16. That the Association did not present any negotiation proposal providing for differential payment to the Special Education Teachers and the Home and School Visitors; in fact, it insisted that salary premiums for the plaintiffs be omitted from such agreement.

17. The Board included said premiums in all offers made to the Association until the last day of said negotiations, at which time the Board agreed to delete said premiums at the Association's insistence.

. . . .

23. The Association admitted through the testimony of its chief negotiator, Mike Mecklowitz, that the Association had no intention to bargain for salary differentials for the plaintiffs, and in fact, on April 23, 1973, advised the Board who sought the continued inclusion of the differentials that the Association would strike if the Board did not drop the provisions.

24. That plaintiffs did not exceed seventeen in number, whereas, the remaining teachers numbered in excess of several hundred.

25. That the Association membership approved the proposed contract; first by voice vote, and then by standing vote on May 1, 1973.

26. The Home and School Visitors and Special Educators registered their dissent by vote.

27. On June 6, 1973, plaintiffs made demand upon the Association and the Board to reinstate the salary differentials in the agreement to become effective July 1, 1973.

28. On June 8, 1973, the Board expressed its willingness to reopen negotiations concerning the proposed agreement with the Association.

29. On June 12, 1973, the Board expressed its willingness to reinstate the salary premium in the proposed agreement without disturbing any of the other provisions of the agreement.

30. The Association refused further negotiations for the purpose of reinstating the salary differentials.

31. On April 23, 1973, the Board dropped its demand for inclusion in the agreement of salary position differential for the plaintiffs only at the 11th hour bargaining sessions, when it became clear that an agreement could not be reached unless the Board gave in to the Association.

32. The Board sent the proposed collective bargaining agreement to its solicitor for review and was informed by the solicitor that it would be illegal for the Board to execute the agreement without plaintiffs' premiums included therein.

33. After the advice of its solicitor, the Board expressed its willingness to reopen negotiations with Association concerning said premium; however, Association refused this offer.

34. The Board and Association executed the 1973-1974 collective bargaining agreement effective July 1, 1973, pursuant to a stipula-

tion and an order of this court dated August 20, 1973, and pending the outcome of the merits of this case.

. . . .

37. The plaintiffs did not give their consent to either the Association or the Board, to delete said differential salary from their employment contract. (Emphasis in original.)

On the above findings, the court below concluded first, that the discontinuance of the appellees' salary premiums were demotions made in violation of Section 1151 of the School Code, 24 P.S. §11-1151, and second, that the Association had not bargained in good faith on behalf of appellees. The court decreed the amendment of the collective bargaining agreement so as to include the 5% salary premiums for the special education teachers and the 3% salary premiums for the home and school visitors. The Association filed exceptions which were overruled and this appeal followed. The Board has not appealed and takes the position of a disinterested stakeholder willing to pay the percentage differentials if required by law.

The Association contends that the court below was without power to give equitable relief because the appellees had an adequate statutory remedy for their assertedly improper demotions and that the court had no jurisdiction to decide whether the Association had engaged in bad faith bargaining, this subject being within the exclusive jurisdiction of the Pennsylvania Labor Relations Board. We agree on both points and therefore do not reach the Association's alternative arguments that there had been neither a demotion within the meaning of the School Code nor an act of bad faith bargaining on the part of the Association.

The Association properly notes with respect to the asserted demotions that Section 1151 of the School Code, 24 P.S. §11-1151, allows the same procedures for

contesting a demotion as those provided for contesting a professional employee's dismissal. Section 1127, 24 P.S. §11-1127, requires notice and school board hearing before dismissal, and Section 1131, 24 P.S. §11-1131, allows appeals from the school board's action to the Secretary of Education with subsequent appeal to this Court in accordance with Section 403 (1) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.403(1). *See also, Department of Education v. Charleroi Area School District*, 22 Pa. Commonwealth Ct. 56, 347 A.2d 736 (1975); *Abington School Board v. Pittenger*, 9 Pa. Commonwealth Ct. 62, 305 A.2d 382 (1973). These are clearly adequate statutory remedies.[2]

The Association next contends that the appellees' charge that the Association has engaged in bad faith collective bargaining describes an unfair labor practice under Section 1201(b)(3) of the Public Employe Relations Act (PERA),[3] 43 P.S. §1101.1201(b)(3), which provides that:

> (b) Employe organizations, their agents, or representatives or public employes are prohibited from:
>
> . . . .
>
> (3) Refusing to bargain collectively in good faith with a public employer, if they have been

---

[2] The appellees also contend that the statutory procedures for contesting a demotion do not provide an adequate remedy at law because this School Board is willing to pay the premiums but is prevented from doing so by the Association. Hence, they contend, a School Board hearing would be without meaning or effect. This argument is without merit. The statute says that only the School Board may demote a professional employee. *Abington School Board v. Pittenger, supra.* It is thus for the School Board, in the first instance, and the Secretary of Education on appeal, to determine the demotion issues.

[3] Act of July 23, 1970, P.L. 563, *as amended.*

designated in accordance with provisions of this act as the exclusive representative of employes in an appropriate unit.

If the Association's contention that its alleged conduct is an unfair labor practice is correct, the court below was without jurisdiction of this subject because Section 1301 of PERA, 43 P.S. §1101.1301, grants exclusive power to the Pennsylvania Labor Relations Board to restrain unfair labor practices. *Harrisburg School District v. Harrisburg Education Association*, 32 Pa. Commonwealth Ct. 348, 379 A.2d 893 (1977). The appellees contend that the obligation imposed upon the union by Section 1201(b)(3) refers only to a duty of the union to the employer and does not describe a duty of the union to its members. We disagree. Section 606 of PERA, 43 P.S. §1101.606 provides that:

Representatives selected by public employes in a unit appropriate for collective bargaining purposes shall be the exclusive representative of all employes in such a unit to bargain on wages, hours, terms and conditions of employment. . . .

Hence the Association in bargaining with the School District was obliged to represent the interests of all its members in good faith and without discrimination to any.[4] The failure of the Association to perform

---

[4] In determining whether there has been a breach of this duty, the fact-finder must keep in mind that:

Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented. A major responsibility of negotiators is to weigh the relative advantages and disadvantages of differing proposals. . . . The bargaining representative, whoever it may be, is responsible to, and owes complete loyalty to, the interest of all whom it represents. . . . Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement af-

this duty as to any of its members would constitute bad faith bargaining, made an unfair labor practice by Section 1201(b)(3). The PLRB has exclusive jurisdiction to abate all unfair labor practices and a court none.[5] *Harrisburg School District v. Harrisburg Education Association, supra.*

Order vacated.

ORDER

AND Now, this 5th day of December, 1977, the order of the Court of Common Pleas of Montgomery County made July 29, 1976 is vacated.

---

fect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

*Ford Motor Co. v. Huffman,* 345 U.S. 330, 337-38 (1953).

[5] We are cognizant of the fact that the U.S. Supreme Court in *Vaca v. Sipes,* 386 U.S. 171 (1967), while treating a breach by a union of its duty of fair representation in bargaining as an unfair labor practice under Section 8 (b)(1)(A) of the NLRA, 29 U.S.C.A. §158(b)(1)(A), refused to grant exclusive jurisdiction over such matters to the NLRB. Federal decisions interpreting the NLRA, while instructive, are not binding in our determinations under PERA. *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975).

The Supreme Court's major objection to deciding that the NLRB should have exclusive jurisdiction in cases in which members charge their union with unfair labor practices was the lack of assurance that the employes injured by the union's conduct would obtain any review of their complaints because the NLRB's General Counsel has *unreviewable* discretion to refuse to institute an unfair labor practice complaint. 386 U.S. at 182-83. This objection is without force in the Pennsylvania public sector, because Section 1502 of PERA, 43 P.S. §1101.1502, provides for judicial review of all final PLRB orders, including orders refusing to bring a complaint. *Pennsylvania Social Services Union, Local 668 v. Pennsylvania Labor Relations Board,* 27 Pa. Commonwealth Ct. 552, 367 A.2d 778 (1976).