## Crilly v. Southeastern Pennsylvania Transportation Authority

*Elizabeth Iannelli*, for plaintiff.
*Richard B. Hardt*, for defendant SEPTA.
*G. Sander Davis*, for unions.

KALISH, *J.*, August 7, 1979—

### I. BACKGROUND

Defendant, Southeastern Pennsylvania Transportation Authority (SEPTA), brings this motion for summary judgment against plaintiff. Plaintiff, Raymond Crilly (Crilly) instituted in June, 1975, this action in trespass and assumpsit against SEPTA, his former employer, and defendants United Transportation Union, International (International) and United Transportation Union,

Local 1594 (Local 1594), his former unions, alleging that defendant SEPTA had wrongfully discharged him and that defendant unions had breached their duty to fairly represent him. There is no dispute that SEPTA discharged plaintiff in June, 1974, and that he thereafter filed a grievance under the four-step mandatory grievance procedure provision of the collective bargaining agreement between SEPTA and Local 1594. Nor is there any question that this grievance was processed through the first three steps of the grievance procedure. At that point, Local 1594 refused to take the grievance to the last step of arbitration.

## II. DISCUSSION

A. Defendant, SEPTA, argues that the action should be dismissed as to itself since the grievance procedures of the collective bargaining agreement between SEPTA and Local 1594 are mandatory and comprise plaintiff's exclusive remedy for his alleged arbitrary discharge. They argue that where there exists a mandatory grievance procedure, such procedure creates the *only* remedy available to a discharged employe claiming that he was improperly discharged: Falsetti v. Local 2026, U.M.W., 400 Pa. 145, 161 A. 2d 882 (1960). If SEPTA's theory is correct, this court is precluded from exercising jurisdiction.

Plaintiff contends that the grievance procedure outlined in the collective bargaining agreement is not his sole remedy. He principally relies on the case of, Vaca v. Sipes, 386 U.S. 171 (1967), wherein the U.S. Supreme Court held that it was permissible for a discharged employe to sue both his union for alleged breach of its duty of fair representation

and his employer for an allegedly unlawful discharge.

This court, of course, recognizes that the case of Vaca, supra, was decided under the Federal National Labor Relations Act (NLRA) and so is not strictly applicable to a situation, as here, where the public employer is exempt from the NLRA. See Crilly v. SEPTA, 529 F. 2d 1355 (3d Cir. 1976). However, although not binding on this court, a decision such as Vaca which interprets labor relations law in the private sector "may be instructive and looked to for guidance." McCluskey v. Com., Department of Transportation, 37 Pa. Commonwealth Ct. 598, 391 A. 2d 45 (1978); Robinson v. Abington Education Assn., 32 Pa. Commonwealth Ct. 563, 379 A. 2d 1371 (1977).

This court agrees that principles of Vaca must be taken into account when considering the present day effect of Falsetti, a case predating Vaca by seven years. Reading the two cases together, it is clear that a discharged employe does not lose his right to sue his former employer on a claim of wrongful discharge merely because the collective bargaining agreement contains a mandatory grievance procedure.

"To leave the employee remediless in such circumstances would, in our opinion, be a great injustice. We cannot believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. Nor do we think that Congress intended to shield employers from the natural consequences of their breaches of bargaining agreements by wrong-

ful union conduct in the enforcement of such agreements." Vaca, supra at 185-186.

Falsetti, supra, certainly continues to be good law in requiring a discharged employe to exhaust his internal union remedies before the courts will exercise jurisdiction. However, once the employe attempts to exhaust the grievance procedure but is prevented by the union's allegedly wrongful refusal to process the grievance, he may bring an action against both the union and the employer: Vaca, supra; Martino v. Transport Workers' Union of Phila., 1 P.C.R. 385 (1978). Here, the undisputed facts establish that plaintiff's attempt to exhaust the grievance procedure was blocked by defendant unions' refusal to arbitrate the grievance. Therefore, it is appropriate for this court to assume jurisdiction over this matter.

It is clear that plaintiff's right to bring an action against SEPTA for his alleged wrongful discharge is at least partially of statutory origin. Section 2028 of Title 66 provides: "No officer or employee shall be discharged or demoted except for just cause." While SEPTA quibbles that plaintiff has not based his complaint against them on that statute, the complaint is sufficient when it states: "Defendants not only have breached the duties they owe to plaintiff under the contract of collective bargaining and the Union Constitution in effect at the time, but they have also violated federal and state statutes governing labor relations causing the harm outlined above." (Par. 34).

B. Defendant SEPTA also contends that the alleged conduct of the unions constitutes an unfair labor practice within the exclusive purview of the Pennsylvania Labor Relations Board (PLRB) such

that this court is precluded from exercising jurisdiction. See McCluskey, supra, Robinson, supra.

The PLRB has exclusive jurisdiction over certain specified unfair practices by both public employers and unions: Act of July 23, 1970, P.L. 563, 43 P.S. §1101.1201. If the conduct charged is not one of the specified practices, then there is no exclusive jurisdiction to the board: Brennan v. Smith, 6 Pa. Commonwelth Ct. 342, 299 A. 2d 683 (1972). Plaintiff's charge that SEPTA wrongfully discharged him does not fit under any of the specified practices.[1]

Plaintiff's charge, namely that his union violated its duty of fair representation in failing to enforce its collective bargaining agreement with SEPTA, is

---

1. 43 P.S. §1101.1201(a) reads as follows:

"(a) Public employers, their agents or representatives are prohibited from: (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act. (2) Dominating or interfering with the formation, existence or administration of any employe organization. (3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization. (4) Discharging or otherwise discriminating against an employe because he has signed or filed an affidavit, petition or complaint or given any information or testimony under this act. (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative. (6) Refusing to reduce a collective bargaining agreement to writing and sign such agreement. (7) Violating any of the rules and regulations established by the board regulating the conduct of representation elections. (8) Refusing to comply with the provisions of an arbitration award deemed binding under section 903 of Article IX. (9) Refusing to comply with the requirements of 'meet and discuss.'"

also not an unfair labor practice within the exclusive province of the PLRB.[2] See Vaca, supra.

The union's duty of fair representation may be broken down into two stages: The duty to fairly represent all employes in collective bargaining and the duty to fairly represent all employes in its enforcement of the resulting collective bargaining agreement. "It is now well established that, as the exclusive bargaining representative of the employees in Owens' bargaining unit, the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining with Swift, . . . and in its enforcement of the resulting collective bargaining agreement." Vaca, supra at 177 (citations omitted).

While a charge that a union violated its duty to fairly represent employees in collective bargaining is properly heard as an unfair labor practice by the PLRB since it is specified under the statute: Robinson, supra; 43 P.S. §1101.1201;[3] the claim that the

---

2. Although the Commonwealth Court in McCluskey, supra, suggests that this type of claim would be within the reach of the PLRB, this court views that court's comments as dicta. Furthermore, the board's primary concern is in effectuating the broad policies of labor law rather than the wrong done an individual employe in a fair representation case: International Brotherhood of Electrical Workers v. Foust, 60 L.Ed. 2d 698 (1979).

3. The provision of 43 P.S. §1101.1201 provides:

"(b) Employe organizations, their agents, or representatives or public employes are prohibited from: . . .

"(3) Refusing to bargain collectively in good faith with a public employer, if they have been designated in accordance with the provisions of this act as the exclusive representative of employes in an appropriate unit."

union failed to properly enforce a collective bargaining agreement is not so specified.

Additionally, plaintiff would face substantial unfairness if he were required to go to the PLRB for his claim against his union and to the court for his claim against the employer. The language in Vaca is again particularly instructive.

"If a breach of duty by the union and a breach of contract by the employer are proven, the court must fashion an appropriate remedy. Presumably, in at least some cases, the union's breach of duty will have enhanced or contributed to the employee's injury. What possible sense could there be in a rule which would permit a court that has litigated the fault of employer and union to fashion a remedy only with respect to the employer? Under such a rule, either the employer would be compelled by the court to pay for the union's wrong—slight deterrence, indeed, to future union misconduct—or the injured employee would be forced to go to two tribunals to repair a single injury. Moreover, the Board would be compelled in many cases either to remedy injuries arising out of a breach of contract, a task which Congress has not assigned to it, or to leave the individual employee without remedy for the union's wrong." Vaca, supra at 187.

The fundamental principle is that the employe is to be made whole, i.e., compensated for a violation of his rights. A union which fails to process a grievance predicated on a breach of contract by the employer cannot be held liable for damages attributable to the employer's conduct. The jury must be properly instructed on how to apportion the damages. Damages against the union for loss of employment are unrecoverable except to the extent that its refusal to handle the grievances added to

the difficulty and expenses of collecting from the employer. See Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed. 2d 21 (1970), and International Brotherhood of Electrical Workers v. Foust, supra. The apportionment rule can only be sensibly applied when both the union and the employer are before the court.

In any event, it would be improper for this court to dismiss the complaint for that reason since it is an objection that should properly be brought by the unions, not by the employer.

Since SEPTA only has raised this issue of jurisdiction in its motion for summary judgment, the motion must be denied.

Accordingly, the court enters the following

### ORDER

And now, August 7, 1979, it is hereby ordered and decreed that defendant SEPTA's motion for summary judgment is denied.