626 F.2d 119
 105 L.R.R.M. (BNA) 2428, 89 Lab.Cas. P 12,334
 INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS, AERONAUTICAL INDUSTRIAL DISTRICT LODGE
720, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Georgia C. Durrance and Ralph Crandall, Intervenors.
 No. 79-7418.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 3, 1980.
Decided Aug. 21, 1980.
 
 Robert M. Simpson, Los Angeles, Cal., for petitioner.
 Bruce N. Cameron, Ann Diamond, Washington, D. C., for respondent.
 
 
 1
 Petition for Review and Cross-Application For Enforcement of an Order of the National Labor Relations Board.
 
 
 2
 Before WALLACE and SKOPIL, Circuit Judges, and EAST,* District Judge.
 
 EAST, District Judge:
 
 3
 The Union petitions for a review and the Board cross-applies for enforcement of the Board's order of July 26, 1976. 243 NLRB No. 128. An Administrative Law Judge (ALJ) had found and the Board agreed that the Union had violated § 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. §§ 151, et seq., by restraining and coercing employees in the exercise of their § 7 rights.
 
 
 4
 The aggrieved dues equivalent paying nonmembers of the Union, employees Georgia Durrance and Ralph Crandall, are intervenors.
 
 
 5
 We note jurisdiction under § 10(e) and (f) of the Act and deny the petition for review and enforce the order.
 
 FACTS:
 
 6
 The collective bargaining agreement between the employer, Douglas Aircraft Company of McDonnell Douglas Corp., and the Union contains a union security provision. All employees must either join the Union or pay the equivalent of union dues and fees. If an employee's dues are not paid for two months, the employee must pay a reinstatement fee or its equivalent, equal to three months' dues. In 1977, dues were $15.70 per month; in 1978, they were $17.20. When an employee is off the payroll because of layoff, sickness, or disability, he or she can obtain monthly unemployment stamps for 50 cents to be used in lieu of regular dues, pursuant to Article G of the Union's Constitution.
 
 
 7
 Georgia Durrance has been employed by the employer since February, 1966. She was a member of the Union until February, 1975, when she resigned during a strike. Since her resignation, she has been a dues and fees equivalent payer. From October 3, 1977 to May 1, 1978, Durrance was on leave for an occupational disability. Because she was not on the payroll, no deductions could be made from her paycheck pursuant to her checkoff authorization. In December, 1977, she received a "Courtesy Notice of Arrearage" from the Union. Such notices are regularly sent to members and nonmembers to enable the employee to avoid the reinstatement fee. Upon receiving the notice, Durrance went to the Union office and tendered $1.00 to cover her November and December obligation. The clerk refused to accept the dollar stating that only members could receive unemployment stamps. On the advice of the Union chairman (similar to a union steward), Durrance paid the full dues while he investigated the matter.
 
 
 8
 In February, 1978, Durrance received another notice. She responded by letter to Union Secretary-Treasurer Ted Neima indicating that she was eligible for unemployment stamps and enclosing $1.00. Durrance wrote to Neima again on March 13 stating that she had discovered she was not obligated to pay any dues while not working and requesting the Union to return her payments for November, December, January and February. Neima responded that "Non-members are not entitled to the privileges specified under the IAM Constitution" and returned her check for $1.00 but not the payments for November and December. Durrance made no further payments until she returned to work and began paying the full dues equivalent. The Union has taken no action against her for dues not paid while she was disabled.
 
 
 9
 Ralph Crandall began working for the employer in 1966. He also resigned from the Union during the 1975 strike and has been an equivalent fee payer since that time. He went on leave of absence for illness in February, 1978 and received a courtesy notice of arrearage in April. He called the Union financial office and requested to pay the 50 cents. He was told that he was not eligible. He then sent a letter and a check for $1.00 to cover two months' dues. Neima returned the check stating that Crandall was not qualified for the unemployment stamps. Crandall paid no further dues, had not returned to work as of the filing of the briefs, and has not been discharged or suffered any adverse action by the Union.
 
 SPECIFICS OF THE BOARD'S ORDER:
 
 10
 The Board found that the Union violated § 8(b)(1)(A) by discriminating against nonmember employees and required the Union to cease and desist from the unfair labor practice, to make Durrance whole for her monetary loss, to allow her and Crandall the benefit of the unemployment stamp program, and to post appropriate notices.
 
 ISSUE ON REVIEW:
 
 11
 Does the Union's refusal to grant unemployment stamps to two nonmember dues equivalent fee payers discriminate between union members and nonunion employees in a manner affecting tenure of employment in violation of § 8(b)(1)(A)?
 
 DISCUSSION:
 Section 7 of the Act reads:
 
 12
 "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3)."
 
 Section 8(b)(1)(A) provides:
 
 13
 "(b) It shall be an unfair labor practice for a labor organization or its agents
 
 
 14
 "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein;"
 
 
 15
 We reject the Union's contentions that: (1) Durrance and Crandall did not meet the eligibility requirements for unemployment stamps because they did not subject themselves to internal Union disciplinary procedures; (2) Unemployment stamps are a privilege of Union membership which is permitted under the Act; and (3) Durrance and Crandall had adequate notice that they had to subject themselves to the disciplinary provisions in order to receive unemployment stamps.
 
 
 16
 In the Union's view, §§ 2 and 3 of Article G of the Grand Lodge Constitution do not contain the only eligibility requirements; it maintains that § 4 constitutes an additional eligibility requirement. Section 4 states that violators of Article G shall be subject to charges, trial and penalty as provided in Article L. Since Durrance and Crandall are not members of the Union and do not consider themselves bound by § 4 or Article L, the Union believes they are not eligible for unemployment stamps.
 
 
 17
 This argument fails for two reasons: First, neither employee was ever told that she or he could obtain stamps upon submission to union discipline; they were repeatedly told that they were ineligible because they were nonmembers. Furthermore, the bulletin posted to inform employees of the program and headed "TO ALL MEMBERS OF IAM DISTRICT LODGE 720" made no mention of the violation section though it clearly set forth the conditions found in §§ 2 and 3. Second, the ALJ was correct when he concluded that § 4 simply is not an eligibility requirement. Section 4 becomes operative only after stamps have been fraudulently obtained. Moreover, as the ALJ points out, the Union could still punish a nonmember who fraudulently obtained stamps by using the enforcement rights of the union-security provision because the employee would not have validly fulfilled his or her dues and fees equivalency obligation. Thus, the Union's arguments that the Board's interpretation discriminates against members because only they must subject themselves to penalty procedures to receive stamps and that it forces the Union to resort to court litigation against offending nonmembers are without merit. In addition, the ALJ stated that even if submission to union discipline were a proper eligibility requirement, he would still find the Union in violation of § 8(b)(1)(A) because it failed to inform Durrance and Crandall of that requirement, thus violating its duty to notify employees what their obligations are. Philadelphia Sheraton Corp., 136 NLRB 888 (1962).
 
 
 18
 The Union's second argument views the condemned practice as falling within the proviso of § 8(b)(1)(A): "That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." The Union considers the Board's holding "an unwarranted intrusion into the Union's internal affairs in a manner proscribed by the proviso to § 8(b)(1)(A)." It relies on Local No. 717, Ass'n of Western Pulp & Paper Workers (Boise Cascade Corp.), 165 NLRB 971 (1967), which upheld a union rule which refunded a portion of one's dues for attendance at membership meetings. Boise Cascade, however, dealt only with union members; it did not address the comparative rights of members and nonmembers.
 
 
 19
 In Hospital and Nursing Home Employees Union Local 113, AFL-CIO (Mound Park Hospital), 228 NLRB 1500, enforced, 567 F.2d 831 (8th Cir. 1977), a union contract granting members 90 days in which to pay dues before they were considered delinquent and nonmembers only ten days was held to be impermissible discrimination against those exercising their right to not join a union. "The statute was designed to assure employees free choice of whether to assume such obligations and reap such benefits, without having the choice affect their employment." 228 NLRB at 1501-02. Other cases as well make it clear that the Union may not restrain or coerce the bargaining unit members in their right to refrain from union membership. E. g., Prestige Bedding Co., 212 NLRB 690 (1974); NLRB v. Local 169, Int'l Teamsters, 111 NLRB 460, enforced, 228 F.2d 425 (3d Cir. 1955). The only condition of membership which is enforceable by discharge under a union security provision is payment of dues and fees. Union Starch & Refining Co., 87 NLRB 779, 785 (1949), enforced, 186 F.2d 1008 (7th Cir. 1951), cert. denied, 342 U.S. 815, 72 S.Ct. 30, 96 L.Ed. 617 (1951). The ALJ found, quite reasonably:
 
 
 20
 "That where, as here, a union provides benefits, such as unemployment stamps, only to members and not to nonmembers of a bargaining unit, and '(t)he only apparent purpose and effect of such discrimination is to encourage union membership,' the Union is in violation of Section 8(b)(1)(A) of the Act."The Union's third argument that Durrance and Crandall had notice that submission to union discipline was a condition of unemployment stamp eligibility is meritless. The Union points to the employees' strike-breaking activities in 1975 and their subsequent disciplinary hearings as proof of their familiarity with union disciplinary procedures. This type of knowledge is irrelevant. At no time were they told that eligibility for unemployment stamps was conditioned upon submitting to union discipline. In fact, the record shows clearly that Durrance and Crandall were denied the benefits because they were not union members. We join in the Board's summary of this case:
 
 
 21
 "In sum, the evidence shows that the Union required substantially lower dues when employees' earnings were reduced; that these reduced dues were only available to union members; that employees Durrance and Crandall were denied the reduced dues because they were not union members; and that the Union operated this discriminatory dues structure in the context of a union security clause requiring payment of union dues as a condition of continued employment. Substantial evidence therefore supports the Board's determination that the Union, by conditioning employment upon the payment of nonuniform dues, unlawfully encouraged employees to join the Union and thereby violated Section 8(b)(1)(A) of the Act."
 
 
 22
 The Union's petition for review is denied and the Board's order is enforced.
 
 
 23
 REVIEW DENIED AND ORDER ENFORCED.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation