Pennsylvania Labor Relations Board *v.* Eastern Lancaster County Education Association. David W. Schreffler, Appellant.

Pennsylvania Labor Relations Board *v.* Eastern Lancaster County School District.

Pennsylvania Labor Relations Board *v.* Eastern Lancaster County Education Association. David W. Schreffler, Appellant.

Argued February 3, 1981, before President Judge CRUMLISH and Judges MENCER, ROGERS, BLATT, CRAIG, MACPHAIL and PALLADINO. Judges WILKINSON, JR., and WILLIAMS, JR. did not participate.

*Thomas A. Beckley, Beckley & Madden,* for appellant.

*James L. Crawford,* Assistant Attorney General, with him *Anthony C. Busillo, II,* Assistant Attorney General, for Pennsylvania Labor Relations Board.

*Catherine C. O'Toole,* for Eastern Lancaster County Education Association.

*Susan R. Friedman, Weglarz, Tryon & Friedman,* for appellee, Eastern Lancaster County School District.

OPINION BY JUDGE ROGERS, March 25, 1981:

David Schreffler[1] appeals from an Order of the Court of Common Pleas of Lancaster County affirming the Pennsylvania Labor Relations Board's (PLRB) dismissal of his unfair labor practice charges brought against the Eastern Lancaster County School District (school district) and the Eastern Lancaster County Education Association (union).

The facts as found by the PLRB and supported by substantial evidence of record are as follows:

The union is the certified exclusive representative of the school district's professional employees. Appellant is a high school social studies teacher in the district and, therefore, a member of the bargaining unit, but has never been a member of the union. In September, 1976, the union and the school board executed a two year collective bargaining agreement. One year later the contracting parties negotiated an amendment to the agreement which, *inter alia,* provided for the extension of group dental insurance

---

[1] Since we decide that appellant's numerous contentions are without merit, it is unnecessary to determine whether the cause was properly brought as a class action.

coverage to all professional employees at a cost to be borne equally by the individual employees and the school district.

On September, 6, 1977, the union held a meeting for the purpose of explaining and discussing the amendment and voting on the question of its ratification. Appellant received notification of the meeting in the form of a flier in his school mailbox but did not attend. Both union members and non-members were present at the meeting. All those in attendance were invited to ask questions and express their views concerning the proposed amendment. As required by Article XII of the union constitution and longstanding practice a vote was taken on the question of ratification by a show of hands of the union members present. Non-members were asked to sit apart from members, presumably to facilitate counting the votes. The proposed amendment was ratified by the approximately one hundred union members present with one member dissenting.

Thereafter appellant notified the school district that he did not wish to be included in the group dental plan and did not authorize the requisite payroll deduction of $1.75 (since reduced to $1.31) for that purpose. Nevertheless this amount was deducted from his pay and appellant filed charges with PLRB alleging unfair practices of the union and the school district under Section 1201 of the Public Employee Relations Act (PERA)[2] and a violation by the union of its duty

---

[2] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.1201, which provides in pertinent part:

    (a) Public employers, their agents or representatives are prohibited from:

    (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

    (2) Dominating or interfering with the formation, existence or administration of any employe organization.

to fairly represent "in good faith and without discrimination" all school district professional employees whether or not they are union members. *Robinson v. Abington Education Association*, 32 Pa. Commonwealth Ct. 563, 571, 379 A.2d 1371, 1374 (1977).

Specifically, appellant challenges the union's practice of polling only union members on the question of contract ratification arguing that this practice deprives him of the representation during collective bargaining that he is entitled to by statute and, in violation of the state and federal constitutions, infringes upon his freedoms of speech and association and his right to petition the government. Appellant also attacks the particular group dental insurance amendment ratified at the September 6th meeting and the union's membership requirement that annual dues be paid not only to the local organization but to the statewide and national affiliates as well.[3]

---

(3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization.

....

(b) Employe organizations, their agents, or representatives or public employes are prohibited from:

(1) Restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

[3] In a separate unfair labor practice charge appellant argued that the union's request for attorney's fees and costs "discourag[ed] him] from exercising [his] rights under PERA." PLRB denied the union's request and refused to issue a complaint based on appellant's charge. PLRB's action in refusing to issue a complaint was not "a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Pennsylvania Social Services Union Local 668 v. PLRB*, 481 Pa. 81, 89, 392 A.2d 256, 259-260 (1978). "Judicial discretion [will not] be substituted for administrative discretion." *Id.*

It is undisputed that a union owes a duty of fair representation to all members of the bargaining unit it is certified to serve. *See Vaca v. Sipes*, 386 U.S. 171 (1967), *Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953); *Steele v. Louisville & N.R.Co.*, 323 U.S. 192 (1944); *McCluskey v. Department of Transportation*, 37 Pa. Commonwealth Ct. 598, 391 A.2d 45 (1978). This duty is owed equally to union and non-union employees: *see International Association of Machinists v. NLRB*, 626 F.2d 119 (9th Cir. 1980); *Brown v. College of Medicine and Dentistry*, 167 N.J. Superior Ct. 532, 401 A.2d 288 (1979), and includes the responsibility on the part of union representatives to communicate with and solicit the views of those, whether or not they are union members, directly affected by collective action. *See Abilene Sheet Metal, Inc. v. NLRB*, 619 F.2d 332 (5th Cir. 1980); *Williams v. Pacific Maritime Association*, 617 F.2d 1321 (9th Cir. 1980); *Retana v. Apartment, Motel, Hotel & Elevator Operators Union Local 14*, 453 F.2d 1018 (9th Cir. 1972). Breach of this duty is an unfair labor practice. *Robinson v. Abington Education Association, supra.*

Equally well established is the right of unions and other voluntary associations to govern their internal affairs without judicial interference and the rule that the procedure applicable to the ratification of collective agreements is an internal union matter. The union membership can, by adopting appropriate constitutional provisions or by-laws, either give to or withhold from the membership the right to ratify collective agreements by popular vote. *See Houchens Market of Elizabethtown, Inc. v. NLRB*, 375 F.2d 208 (6th Cir. 1967).

In *Pastrana v. Folding Box, Corrugated Box and Display Workers Local 381*, 212 F. Supp. 639

(S.D.N.Y. 1962)[4] union members, invoking the union's duty of fair representation, sought to prevent the effectuation of a collective bargaining agreement which had been executed by the employer and union officials in the face of a majority vote of the bargaining unit employees to reject the contract. The District Court held that the union, as the employees' democratically selected representative, had the right, absent an internal rule to the contrary, to enter into a collective agreement despite popular rejection.

In *Lear-Siegler, Inc. v. International Union, United Automobile, Aerospace, and Agricultural Implement Workers*, 287 F. Supp. 692 (W.D. Mich. 1968), the employer challenged the union's practice of polling skilled and non-skilled members separately on the question of contract ratification. The Court held that contract ratification procedures are an internal union matter not subject to judicial review — reasoning that sufficient democratic input was provided by the earlier certification and representation elections in which the union was selected by all the employees as their bargaining representative and by which certain union members were selected to attend the international union's constitutional convention where the questioned ratification procedure was adopted. The Court wrote:

> Union members are bound by the constitution and by-laws of the union, and by the lawful decisions of their representatives, just as citizens of a state are bound by the laws of the legislature. Obviously the 'one-man, one-vote' rule does not give citizens the right to a

---

[4] Decisions of the federal courts interpreting the National Labor Relations Act, though not controlling, provide some guidance in the interpretation of PERA. *See Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975).

democratic vote on each action taken by their elected officials. Similarly, that rule will not be . extended to every action taken by labor unions. *Id.* at 697. In *Oregon City Federation of Teachers v. Public Employee Relations Board,* 23 Or. App. 540, 543 P.2d 297 (1975) an uncertified teacher's union challenged the bargaining representative union's contract ratification procedure. It was held that: "the means of contract ratification [is left] to the discretion of the exclusive representative. Although it might be rare, it would be legal for the union's leadership to ratify a contract without any form of consultation with the general membership." *Id.* 543 P.2d at 299.

In support of his position that the duty of fair representation requires that non-members of the union be polled on the question of contract ratification, appellant relies on *Branch 6000, National Association of Letter Carriers v. NLRB,* 595 F.2d 808 (D.C.Cir. 1979). In that case non-union employees successfully challenged the results of a union referendum conducted to determine whether days off would be scheduled on a fixed or rotating basis. Recognizing that the usual fair representation case requires a showing of disparate impact of the contract terms on the complainant group, a showing absent in the record before it, the Court nevertheless affirmed the NLRB's conclusion that the union had not functioned, as it was required to do, in a representative capacity. The decision was premised on the presence of "unique circumstances" — specifically, that the referendum was restricted to union members and that each union member was instructed to vote only his personal preference. The Court distinguished the situation before it from more typical contract ratification procedures as follows:

This does not mean that exercise by the union membership of the decisionmaking

responsibility would violate the duty of fair representation under all circumstances. Thus, we do not have before us a case of a procedure, with appropriate safeguards, which contemplated that the union membership would act as a 'committee of the whole,' and that the vote of each member would reflect some consideration of the interests of all employees.

....

We are in no position to reject as untenable the Board's statement that the Branch 6000 procedure is distinguishable from a procedure of contract ratification restricted to union members. A union ratification procedure is consistent with negotiation of a tentative contract by the bargaining agent, acting in a representative capacity, and with observance of the duty of fair representation.... [T]he bargaining representative is not required to carry out the wishes of non-union employees; it suffices that he is available to ascertain them and take them into account.

*Id.* 812-813.

In the instant case there is no allegation that the amendment at issue affects non-union employees differently from union members. Appellant indeed testified that he desired not to participate in the dental plan only because, as he testified, he "has good teeth". Further this case is quite different on the facts from *Branch 6000, supra.* Here both union and non-union employees were notified of the ratification meeting. Here both union and non-union employees were present at the meeting and were invited to ask questions and express their views.[5] There is no indication that

---

[5] Appellant testified that two named union officials had previously told him that he would not be permitted to "participate"

union members were instructed to vote only their own preferences or to disregard the interests of their non-union fellows. We will not presume that the interests of non-union employees were disregarded. On the contrary, "[t]he general presumption is that the union's representative obligation has been performed in good faith". *Branch 6000, supra,* at 812. The appellant failed to establish a violation of the duty of fair representation.

This result is supported by the one decision (not before cited in this proceeding) which deals with the precise issues here presented. *See Daigle v. Jefferson Parish School Bd.,* 345 So.2d 583 (La.App.Ct. 1977) writ refused 347 S.2d 260 (1977) which upheld the legality of a contract ratification procedure restricted to union members. Additional support is provided by Section 902 of PERA, 43 P.S. §1101.902 which provides:

RATIFICATION BY UNION MEMBERS

If the provisions of the constitution or bylaws of an employee organization requires ratification of a collective bargaining agreement by its membership, only those members who belong to the bargaining unit involved shall be entitled to vote on such ratification notwithstanding such provisions.

It is clear from this provision that the legislature is aware of the practice of restricting contract ratification

---

at the meeting. This testimony was directly disputed by one of the officials who was called as a witness for the union. Testimony by appellant's wife, also a non-union professional employee in the school district, established that non-union members had attended contract ratification meetings in the past though they had not been permitted to vote. Additional testimony of appellant, relied on by the court below, indicates that he understood the conversations at issue to mean that if he attended the meeting he would not be permitted to vote on the question of ratification.

to union members. Nevertheless this practice is not among those enumerated as unfair labor practices in Section 1201 of PERA, 43 P.S. §1101.1201.

We can now quickly dispose of appellant's remaining contentions. Since the union has not committed an unfair labor practice, the related charge against the school district is similarly groundless.

Appellant's constitutional arguments seek to call collective bargaining itself into question. For example, he argues that his inability under the doctrine of exclusive representation to negotiate as an individual with the school district deprives him of his constitutional right to petition the government. The complete answer to such arguments lies in the determination of the Supreme Court that the limited infringement on individual rights implicit in the NLRA and similar state statutes is justified by the compelling state interest in the orderly resolution of labor disputes. *See Abood v. Detroit Board of Education*, 431 U.S. 209 (1977). Cf. *PLRB v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975).

Finally, the matter of the union's affiliation with the statewide and national organizations and the commensurate increase in annual dues is, like the matter of ratification procedure, an internal union affair. *See Blanchard v. Johnson*, 532 F.2d 1074 (6th Cir. 1976), *cert. denied sub nom Maritime Engineers Beneficial Association v. Johnson*, 429 U.S. 834 (1976). *Accord* NLRB General Counsel Administrative Ruling No. SR-726 (1960), 46 LRRM 1492.

ORDER

AND Now, this 25th day of March, 1981, the order of the Court of Common Pleas of Lancaster is affirmed.

This decision was reached prior to the expiration of the term of office of Judge WILKINSON.