**[J-74-2019] [MO: Todd, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| ASSOCIATION OF PENNSYLVANIA STATE COLLEGE AND UNIVERSITY FACULTIES | : | No. 67 MAP 2018 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 966 |
| | : | C.D. 2017 dated April 19, 2018 |
| v. | : | Affirming in Part & Reversing in Part |
| | : | the June 20, 2017 Final Order of the |
| | : | Pennsylvania Labor Relations Board |
| PENNSYLVANIA LABOR RELATIONS BOARD | : | at No. PERA-C-15-240-E |
| | : | |
| | : | ARGUED:  September 12, 2019 |
| | : | |
| APPEAL OF:  PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION | : | |
| | : | |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED:  March 26, 2020**

I respectfully dissent.  I would hold the implementation of the Protection of Minors Policy (Policy) by the Pennsylvania State System of Higher Education (State System) is subject to mandatory collective bargaining, as the Policy does not implicate an inherent managerial policy of the State System.  *See* 43 P.S. §1101.702 (public employers "shall not be required to bargain over matters of inherent managerial policy").  In my view, the Policy's infringement upon the working conditions of certain members of the Association of Pennsylvania State College and University Faculties (the Association) — who are specifically exempt from Child Protective Services Law (CPSL) background check and reporting requirements[1] — outweighs the State System's inherent managerial prerogative to implement the Policy.

---

[1] 23 Pa C.S. §§6301-6386

At the outset, I note the Association seeks a holding that only a limited aspect of the Policy is subject to mandatory collective bargaining. As detailed by the majority, in passing Act 15, the General Assembly specifically exempted from CPSL requirements employees at higher education institutions who do not interact with un-matriculated minor students. *See* Majority Op. at 4, *citing* 23 Pa.C.S. §6344(a.1). Specifically, the CPSL requires all State System employees and volunteers who have direct contact with un-matriculated minor children to comply with these mandates. 23 Pa.C.S. §6344(a.1). The CPSL defines "[d]irect contact with children" as "[t]he care, supervision, guidance or control of children or routine interaction with children." 23 Pa.C.S. §6303. *See also id.* ("[d]irect volunteer contact" is "[t]he care, supervision, guidance or control of children and routine interaction with children"). Additionally, Section 703 of the Public Employe Relations Act (PERA),[2] requires that parties to a collective bargaining process comply with statutes enacted by the General Assembly. 43 P.S. §1101.703. Thus, all State System employees and volunteers who care for, supervise, control or routinely interact with children are required to obtain criminal background checks and engage in self-reporting in accordance with the CPSL, notwithstanding the Policy. The only question here is whether the State System must engage in collective bargaining with respect to application of the Policy to CPSL-exempt employees.

We may answer this operative question by determining whether the Policy is a work condition that is subject to mandatory bargaining under Section 701 of PERA, or an "inherent managerial policy" under Section 702 that falls outside collective bargaining. Although I agree the Policy impacts the working conditions of the State System's employees, I cannot agree that the Policy implicates a "core aspect of the State System's primary mission[.]". *See* Majority Op. at 26.

---

[2] 43 P.S. §§1101.101-1101.2301.

The State System's enabling legislation clearly provides its primary mission as follows:

> The State System of Higher Education['s] . . . purpose shall be to provide high quality education at the lowest possible cost to the students. The **primary mission** of the [State S]ystem is the **provision of instruction for undergraduate and graduate students** to and beyond the master's degree in liberal arts and sciences and in applied fields, including the teaching profession. . . .

24 P.S. §20-2003-A (emphasis added). In concluding the protection of minors is a "core aspect" of the State System's public function, the majority expands its "primary mission" beyond the statutory language to include minors who "participate" in the university system. *See* Majority Op. slip op at 25-26. The plain language of the statute expressly limits the State System's primary mission to the instruction of "undergraduate and graduate students*," i.e.* persons who have enrolled at a college or university within the State System, 99% of whom are adults. *See* Brief of Appellees at 28.

Further, the General Assembly's amendments via Act 15 militate against finding the protection of minors is an inherent managerial policy of the State System. By specifically excluding certain State System employees from the CPSL's requirements, the General Assembly has clearly indicated that the important public interest of safeguarding children is not adversely impacted when those particular employees are excused from the background checks and reporting requirements. *See* 23 Pa.C.S. §6344(a.1). The majority acknowledges the CPSL should not "be construed to otherwise interfere with the ability of an employer . . . to make employment, discipline or termination decisions or from establishing additional standards as part of the hiring or selection process for employees or volunteers." 23 Pa.C.S. § 6344.3(e). While I agree with the majority that this section

creates "a floor above which an employer may require additional" background checks and reporting requirements, *see* Majority op. at 25 n.14, such additional requirements must nevertheless serve an inherent managerial policy in order to be excluded from mandatory collective bargaining. *See* 43 P.S. §1101.702. In my view, the Policy cannot be considered an "inherent managerial policy" when it imposes an obligation the General Assembly intentionally and purposefully excused. The exclusionary amendments to the CPSL through Act 15 reveal that the public interest in protecting minors is **not** advanced by requiring legislatively exempt employees to undergo background checks and reporting requirements. Accordingly, while the State System may impose more obligations on its employees than the General Assembly, those additional obligations must be subject to collective bargaining when they do not further an inherent managerial policy.

Of course, I recognize the importance of protecting minors everywhere, including on university campuses, and although it is not the State System's statutorily defined "primary mission", 24 P.S. §20-2003-A, the State System does bear responsibility for the safety of minors visiting public university campuses. *See City of Philadelphia v. Int'l Ass'n of Firefighters, Local 22*, 999 A.2d 555, 570 (Pa. 2010) (discussing "General Assembly's recognition that a public employer is also a public entity responsible to all of its citizens for a number of decisions that concern the public welfare."). However, this reality is not determinative of whether the Policy should escape the collective bargaining process. Rather, we must balance the public benefit of the Policy against its impact on the working conditions of the affected employees.

"[T]he General Assembly intended that the scope of collective bargaining set forth in Section [701] be viewed broadly, to encompass any subject that is rationally related to

the 'terms and conditions of employment,' including employee 'compensation, hours, working conditions, pensions, retirement and other benefits.'" *City of Philadelphia,* 999 A.2d at 569, *see also Borough of Ellwood City v. Pennsylvania Labor Relations Bd.*, 998 A.2d 589, 598 (Pa. 2010) ("We can safely say . . . that the concept [of what qualifies as a working condition] is a broad one."). As the majority recognizes, it is apparent the Policy impacts working conditions — it requires employees to submit criminal background checks and self-report certain arrests and criminal convictions, which can in turn result in discharge or other adverse employment consequences, as well as harm to reputation. I would strike the balance of these competing interests in favor of requiring collective bargaining.

This Court has explained:

> where an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining under section 701 simply because it may **touch upon basic policy**. [Rather i]t is the duty of the . . . courts . . . to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole.

*Pennsylvania Labor Relations Bd. v. State Coll. Area Sch. Dist.*, 337 A.2d 262, 268 (Pa. 1975) (emphasis added). More recently, we have opined that where "the topic is rationally related to the terms and conditions of employment . . . the proper approach is to inquire whether collective bargaining over the topic would unduly infringe upon the public employer's essential managerial responsibilities. If so, it will be considered a managerial prerogative and non-bargainable. If not, the topic is subject to mandatory collective bargaining." *Borough of Ellwood City,* 998 A.2d at 600. *See City of Philadelphia,* 999 A.2d at 561 ("an issue is deemed bargainable if it bears a rational relationship to an

employee's duties" but "where a managerial policy substantially outweighs the impact of an issue on employees, the topic will be deemed a managerial prerogative and non-bargainable").

Accordingly, although this Court has considered and identified various ways to balance the competing interests when determining whether an employment policy is subject to collective bargaining, we have not articulated a definitive balancing test. We have, at various times, considered the following: (1) "whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its **probable effect** on the **basic policy** of the system as a whole[.]" *State College,* 337 A.2d at 268 (emphasis added); (2) whether the "managerial policy **substantially outweighs** the impact of an issue on employees[']" working conditions, *City of Philadelphia,* 999 A.2d at 561 (emphasis added) (additional citations omitted); and (3) "whether collective bargaining over the [policy] would **unduly infringe** upon the public employer's essential managerial responsibilities." *Borough of Ellwood City,* 998 A.2d at 600 (emphasis added).

After considering these factors, I conclude the Policy is a mandatory subject of collective bargaining and not an inherent managerial prerogative. First, as discussed above, while the Policy may "touch upon" a policy of protecting minors on public university campuses, it does not concern a "core aspect" of the State System's "primary mission" of providing higher education. *See State College,* 337 A.2d at 268; *see also* Majority Op. at 26. Implementation of the Policy will have no effect, let alone a probable effect, on the State System's public purpose of providing undergraduate and graduate instruction. However, imposing background checks and reporting requirements on CPSL-exempt

employees will significantly impact the terms and conditions of their employment, where tenure, reputation and employment could be irretrievably lost. Consequently, the managerial interest promoted by the Policy does not outweigh the impact on the employees' working conditions. *See Id.* at 23. Moreover, in my view, requiring collective bargaining over the Policy will not unduly infringe on the State System's inherent managerial prerogative, which involves providing instruction to adult students. Furthermore, to the extent the State System has an obligation to protect minors on university campuses, those minors are already protected under the terms of the CPSL.

Accordingly, I would affirm the Commonwealth Court's finding that the Policy is subject to mandatory collective bargaining.