# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny,                          :
                     Petitioner          :
                                           :
               v.          :     No. 618 C.D. 2023
                                           :     Argued:  May 23, 2024
Pennsylvania Labor Relations Board,           :
                     Respondent          :

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                         **HONORABLE PATRICIA A. McCULLOUGH,** Judge (P.)
                         **HONORABLE LORI A. DUMAS,** Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**       **FILED: August 8, 2024**

       County of Allegheny (County) filed a petition for review (Petition) of a Final Order[1] of the Pennsylvania Labor Relations Board (Board), which sustained in part and dismissed in part exceptions filed by the Allegheny County Prison Employees Independent Union (Union) to a Proposed Decision and Order by a Hearing Examiner. The Board made absolute and final the Hearing Examiner's Proposed Decision and Order dismissing the charge and rescinding the unfair labor practice complaint. The Board and Hearing Examiner concluded County did not commit an unfair labor practice by not engaging in collective bargaining with the Union before

---

[1] The Final Order can be found in the Reproduced Record at pages 418 through 425. The Court further notes the Reproduced Record does not comport with Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 (requiring that the pagination of reproduced records be in the form of an Arabic number followed by a small "a"). For ease, the Court will utilize the method of pagination used by the Reproduced Record.

implementing a policy that required Union members to become vaccinated against COVID-19 (Vaccine Policy). While the Vaccine Policy was found to be within management's prerogative, the Board also stated it was a new form of discipline subject to impact bargaining. It is that specific statement by the Board that County challenges. The Board contends County was a prevailing party in that the unfair labor practice charge was dismissed and thus, it is not aggrieved by the Final Order. After review, we are constrained to conclude County does not have standing and, therefore, must dismiss County's appeal.

In late 2020, County internally began discussing the need for a Vaccine Policy as the number of COVID-19 cases had spiked. (Proposed Decision and Order (Proposed Decision) Findings of Fact (FOF) ¶¶ 3-4.)[2] Based on information from County and State Departments of Health and the Centers for Disease Control, another spike in cases was expected due to COVID-19 variants, for which County hoped vaccinations would help slow the spread and lessen the severity of the symptoms of those infected. (*Id.* ¶ 4.) Other mitigation efforts, such as masking, social distancing, and remote work, were utilized by County where possible, but these efforts were not sufficient to control the spread of COVID-19. (*Id.* ¶ 6.) In addition, County's jail noted specific issues with outbreaks of COVID-19, was forced to implement lockdowns based on a severe lack of staff, had to implement 12-hour shifts due to staffing shortages, and had to reduce the number of inmates. (*Id.* ¶¶ 6, 26-28.) To keep its employees and the public with which they interact safe, County believed it needed to mandate vaccines. (*Id.* ¶ 5.) County already required vaccination against COVID-19 for new employees. (*Id.* ¶ 7.)

---

[2] The Proposed Decision and Order can be found at page 183 of the Reproduced Record.

On August 19, 2021, the Union filed an unfair labor practice charge asserting County violated Section 1201(a)(1) and (5) of the Public Employe Relations Act (PERA),[3] 43 P.S. § 1101.1201(a)(1), (5), for implementing a policy requiring County employees to wear masks and undergo weekly COVID-19 testing. (Proposed Decision at 1.) The Board's Secretary issued a complaint[4] and a notice of hearing on September 22, 2021, but before the scheduled hearing date, on September 29, 2021, County announced plans to implement the Vaccine Policy, which would require all of County's employees in the executive branch,[5] including its corrections officers (COs) who are members of the Union, to become fully vaccinated against

---

[3] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.1201(a)(1), (5). Section 1201 of PERA states, in pertinent part:

> (a) Public employers, their agents or representatives are prohibited from:
>
> > (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
> >
> > * * * *
> >
> > (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

*Id.*

[4] *See* 34 Pa. Code § 95.81 ("The Secretary of the Board . . . will have authority to determine whether complaints will issue in unfair practice cases.").

[5] Approximately 5,000 employees including police officers, corrections officers, other employees of the jail and police department, employees of Kane Senior Living Home, Facilities, and the Departments of Economic Development, Health, Law, and Human Services were impacted. (FOF ¶ 10.) A similar appeal involving the labor union representing the police officers is docketed at 617 C.D. 2023 and was argued seriately with the present matter. *See County of Allegheny v. Pa. Lab. Rels. Bd.* (Pa. Cmwlth. No. 617 C.D. 2023, filed August 8, 2024).

COVID-19 by December 1, 2021, unless approved for an exemption.[6] (*Id.* ¶ 8.) Before announcing the Vaccine Policy, County did not bargain with the Union, though County's executive called each Union representative in advance to advise of County's plan. (*Id.* ¶ 9.) The Vaccine Policy was announced publicly through a press release and emailed to every employee. (*Id.* ¶¶ 8, 10-11.) In addition, letters were mailed to employees for whom County did not yet have proof of vaccination. (*Id.* ¶¶ 13, 15.) All correspondence stated that noncompliance would subject the employee to termination of employment. (*Id.* ¶¶ 8, 11, 13, 15.)

County has approximately 402 COs who primarily work in County's jail, and approximately 60% of the COs were fully vaccinated at the time of the November 19, 2021 hearing.[7] (*Id.* ¶¶ 17-18.) As of February 22, 2022, 10 COs were discharged for not complying with the Vaccine Policy. (*Id.* ¶ 22.) The Union grieved the 10 discharges as violating the applicable disciplinary sections of the parties' collective bargaining agreement (CBA). (*Id.*)

One day after the Vaccine Policy was announced, the Union filed an amended charge of unfair labor practice with the Board, again alleging County violated Section 1201(a)(1) and (5) of the PERA. (Reproduced Record (R.R.) at 8-12.) The Secretary issued an Amended Complaint, and a hearing was scheduled before a Hearing Examiner. After multiple days of virtual testimony, and following post-hearing briefing by the parties, the Hearing Examiner issued a Proposed Decision and Order on September 16, 2022. Therein, the Hearing Examiner explained that in an unfair labor practice proceeding, the complainant carries the burden of proof, and

---

[6] County received 215 requests for exemptions based on religious and/or medical reasons. (FOF ¶ 14.) While the review of those requests was still ongoing at the time of the February 23, 2022 hearing, no religious exemptions and one or two medical exemptions were granted. (*Id.*)

[7] The Proposed Decision's Finding of Fact 18 mistakenly lists the date of the November 19, 2021 hearing as the November 19, 2022 hearing.

the Board will find an unfair labor practice where "the employer unilaterally changes a mandatory subject of bargaining." (Proposed Decision at 16.) The Hearing Examiner continued to explain that where "the employer changes a matter of inherent managerial policy . . . , then no refusal to bargain may be found." (*Id.*) The Hearing Examiner cited *Pennsylvania Labor Relations Board v. State College Area School District*, 337 A.2d 262 (Pa. 1975), for the proposition that "[w]he[re] an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours, and other terms and conditions of employment, it is not [automatically] removed as a matter subject to good faith bargaining." (Proposed Decision at 16 (quotation omitted)). Rather, the Board and the courts must "determine whether the impact of the issue on the interest of the employe in wages, hours[,] and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole." (*Id.*) Then, if the Board and courts determine "that the matter is one of inherent managerial policy but does affect wages, hours, and terms and conditions of employment, the public employer shall be required to meet and discuss such subject upon request by the public employe's representative[.]" (*Id.* (quoting *State College*, 337 A.2d at 268).) With those principles in mind, the Hearing Examiner determined that while the Vaccine Policy "involves topics that are mandatory subjects of bargaining" because it requires employees to undergo a medical procedure that might result in side effects, the Hearing Examiner declined to find it resulted in a new form of discipline. (Proposed Decision at 16-17.) Specifically, the Hearing Examiner reasoned:

> The Board has held that where the discipline for violating new work rules is already subsumed within the existing [CBA], there is no new discipline but there is a severable impact on employes that has to be bargained. . . . The record in this matter shows that [the Union] has not demanded impact bargaining on this issue.

5

(*Id.* at 17-18 (citations omitted).)

The Hearing Examiner found the record evidence established that the purpose of the Vaccine Policy was to protect the health and safety of County's workforce and the public with which it interacts and to ensure that it has adequate staffing levels to provide critical services. (*Id.* at 19.) While the former was "manifestly a subject related to [] working conditions," to the extent it was concerned with employee health and safety, the Hearing Examiner found the latter concerns involving the public were managerial prerogatives. (*Id.*) The Hearing Examiner concluded that "if the issues covered by the Vaccine Policy were determined to be mandatory subjects of bargaining, collective bargaining over the Vaccine Policy would clash with County's policy of ensuring that all employes were vaccinated by December 1, 2021." (*Id.* at 20.) This date was important, the Hearing Examiner explained, because another wave of infections was anticipated, the effects of which County hoped to ameliorate. (*Id.*) The Hearing Examiner continued:

> To subject the Vaccine Policy to collective bargaining would likely completely frustrate the timing of the Vaccine Policy. If the deadline to comply with the Vaccine Policy [was] delayed, I infer from the record that it would have been likely that some County employes, including [CO]s, would not have been vaccinated by December 1, 2021, which would have frustrated [] County's interest in protecting the health of its citizens and maintaining critical staffing and its standards of operation through the predicted and realized surge in COVID-19.

(*Id.* at 20.)

To the extent the Union argued that the vaccines were ineffective and therefore there would be no undue infringement on County's managerial rights, the Hearing Examiner determined "it is not [the Hearing Examiner's] place, nor the Board's, to judge the wisdom of a public employer's actions[,] and it is not the

6

burden of County in this case to show the wisdom of its exercise of managerial policy to the satisfaction of the Union." (*Id.* at 22.)

Accordingly, the Hearing Examiner concluded that requiring bargaining over the Vaccine Policy would infringe on County's managerial responsibilities, implementation of the Vaccine Policy was a proper exercise of County's managerial prerogative, and no unfair labor practice occurred. (*Id.*)

The Union filed exceptions to the Proposed Order, challenging, *inter alia*, the Hearing Examiner's conclusion that the Vaccine Policy was a proper exercise of managerial prerogative and that the Vaccine Policy was not a new form of discipline. (R.R. at 206.) In reviewing the Hearing Examiner's Proposed Decision, the Board found County's proffered reasons for implementing the Vaccine Policy—ensuring adequate staffing and protecting the health and safety of the public—were sufficient to establish that implementation of the Vaccine Policy was within County's managerial prerogative. (Final Order at 6-7 (citing *Amalgamated Transit Union, Div. 1279 v. Cambria Cnty. Trans. Auth.*, 21 PPER ¶ 21007 (Final Order 1989), 1989 WL 1701829).) In response to the Union's arguments about the vaccines' effectiveness, the Board stated it would "not delve into the wisdom of an employer policy once it has been determined to be a managerial prerogative." (*Id.* at 7.) In analyzing the Union's argument "that the Hearing Examiner erred in holding that the Vaccine Policy was not a new form of discipline because it exposes officers to potential discipline for conduct not previously chargeable, *i.e.* termination from employment for failure to get a vaccine" the Board concluded as follows:

> In this regard, the Board agrees and finds that this matter is akin to the situation presented in *Cambria County Transit Authority*. In that case, the Board held that, although the transit authority's drug and alcohol policy was a matter of inherent managerial prerogative, the policy created an entirely new ground for employe discipline, *i.e.*, discharge

7

for failing to submit to a drug or alcohol test, which required bargaining over the disciplinary aspects of the policy.

Similarly, the [COs] were not previously subject to discipline for failure to receive a vaccine and, therefore, the Vaccine Policy's disciplinary consequences of refusing the COVID-19 vaccine **are an impact severable from the policy itself, and as such, subject to bargaining**. . . . Here, however, the record is devoid of any evidence to establish that the Union expressly requested impact bargaining, and thus, no unfair labor practice **has yet occurred** for a refusal to impact bargain. . . . Therefore, the Union's exception on this issue is sustained, in part, and denied, in part. Accordingly, **the Hearing Examiner's conclusion that the Vaccine Policy was not a new form of discipline is vacated.**

After a thorough review of the exceptions and all matters of record, the Hearing Examiner did not err in concluding that [] County's implementation of a mandatory COVID-19 Vaccine Policy did not violate Section 1201(a)(1) or (5) of PERA.

(*Id*. at 7-8 (emphasis added).) The Board then ordered "that the exceptions filed by the [Union] are hereby sustained, in part, and dismissed, in part, and the . . . Proposed Decision and Order . . . is hereby made absolute and final as modified herein." (*Id*. at 8.)

County thereafter filed the Petition asserting that it "disputes the [Board]'s award of impact bargaining following determination that the [Vaccine Policy] constitutes a managerial prerogative." (Petition ¶ 5.) County requests that this Court reverse the Final Order with respect to its conclusion that the Vaccine Policy is subject to impact bargaining. (*Id*. ¶ 6.)

County's, the Board's, and the Union's arguments in this case are substantially the same as the arguments presented in the companion case, *County of Allegheny v. Pennsylvania Labor Relations Board* (Pa. Cmwlth., No. 617 C.D. 2023, filed ___, 2024) (*County of Allegheny I*), which involves application of the Vaccine Policy to the union representing County's police officers. Because the parties'

arguments and the relevant facts here are the same as in the companion case, including that County lacks standing, our analysis therein controls this case. Accordingly, County's Petition is dismissed for lack of standing based on the reasons set forth in *County of Allegheny I*.[8]

---

**RENÉE COHN JUBELIRER,** President Judge

Judge McCullough concurs in the result only.

---

[8] Because we dismiss the appeal, we do not reach the merits of whether the Board erred in stating that the Vaccine Policy was a new form of discipline subject to impact bargaining.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny,             :
                  Petitioner     :
                                   :
          v.                   :    No. 618 C.D. 2023
                                   :
Pennsylvania Labor Relations Board,   :
                  Respondent   :

# **O R D E R**

     **NOW**, August 8, 2024, the Petition for Review filed by County of Allegheny is **DISMISSED**.

_____

**RENÉE COHN JUBELIRER,** President Judge